972 P.2d 179

The SAN CARLOS APACHE TRIBE, the Tonto Apache Tribe and the Yavapai Apache Tribe, all Federally recognized Indian Tribes, Petitioners.

v.

The SUPERIOR COURT of Arizona, In and For the COUNTY OF MARICOPA, and Honorable Susan R. Bolton, a judge thereof; The Superior Court of Arizona, in and for the County of Apache, and the Honorable Allen G. Minker, a judge thereof; The Honorable John E. Thorson, Special Master, Arizona General Stream Adjudications; State of Arizona, Rita Pearson, Director, Arizona Department of Water Resources; Grant J. Woods, Arizona Attorney General; Arizona State Land Department, Salt River Valley Water Users Association; Phelps Dodge Corporation; Roosevelt Water Conservation District and all other claimants to water rights in the Gila River System and Source and the Little Colorado River System and Source as real parties in interest, Respondents.

No. CV–95–0161–SA.

Supreme Court of Arizona,
En Banc.

Jan. 7, 1999.

Sparks, Tehan & Ryley, P.C. Scottsdale By: Joe P. Sparks Kevin T. Tehan John H. Ryley Attorneys for Petitioners San Carlos Apache Tribe, Tonto Apache Tribe, and Yavapai Apache Tribe.

Patricia Madueno, Chairperson, Needles, California, Fort Mojave Indian Tribe, Joinder Petitioner, Delbert Havatone, Chairman, Peach Springs, Hualapai Indian Tribe and Daniel H. Israel, Carefree, Attorney for Joinder Petitioner Hualapai Indian Tribe.

David P. Frank, Assistant Attorney General, Tohono O'odham Nation, Sells, Joinder Petitioner, Robert C. Brauchli, General Counsel, Whiteriver and William H. Veeder, Washington, D.C., Attorneys for Special Appearance Petitioner White Mountain Apache Tribe.

Grant Woods, Arizona Attorney General By: Joseph E. Clifford, Charlotte Benson, Phoenix, Attorneys for Respondents Grant J. Woods and State of Arizona.

Arizona Department of Water Resources By: Michael J. Pearce, Kenneth C. Slowinski, Phoenix, Attorneys for Respondents Rita Pearson Arizona Department of Water Resources, and Arizona State Land Department.

Gust Rosenfeld, P.L.C. By: Jerry L. Haggard, Kevin M. Moran and Phelps Dodge Corporation, By: Cynthia M. Chandley, Phoenix, Attorneys for Respondent Phelps Dodge Corporation.

Burton M. Apker Phoenix Attorneys for Non–Party Respondent ASARCO Incorporated.

Ryley Carlock & Applewhite, P.A. By: George Read Carlock, Michael J. Brophy, Barry R. Sanders, Phoenix, Attorneys for Respondent Roosevelt Water Conservation District and Non–Party Respondent Aztec Land & Cattle Co.

Arizona Public Service Company By L. William Staudenmaier, Shiela B. Schmidt, Phoenix, Attorneys for Non–Party Respondent Arizona Public Service Company.

Cox and Cox By: Alfred S. Cox, Alan J. Cox, Scottsdale, Attorneys for Non–Party Respondents Gila River Indian Community and Silas Kisto.

Brown & Brown By: David Albert Brown, Michael John Brown, Pinetop, Attorneys for Non–Party Respondents Silver Creek Irrigation District and Arizona Cattle Growers Association.

Salmon Lewis & Weldon, P.L.C. By: Riney B. Salmon, II, M. Byron Lewis, John B. Weldon, Stephen E. Crofton, Lisa M. McKnight, Phoenix, Attorneys for Respondents Salt River Project Agricultural Improvement and Power District, and Salt River Valley Water Users' Association, and Non–Party Respondents City of Tempe, San Carlos Irrigation and Drainage District, and Maricopa County Municipal Water Conservation District No. 1

Snell & Wilmer By: Robert B. Hoffman, Carlos D. Ronstadt, Jeffrey W. Crockett, Phoenix, Attorneys for Non–Party ·Respondent BHP Copper Inc. (formerly Magma Copper Co.)

United States Department of Justice Environment and Natural Resources Division By: Robert L. Klarquist, F. Patrick Barry, Bradley S. Bridgewater, Washington, D.C., Attorneys for Non–Party Respondent Department of Justice Environment and Natural Resources Division.

City of Phoenix By: Roderick G. McDougall, M. James Callahan, Phoenix, Attorneys for Non–Party Respondent City of Phoenix.

Ulrich Kessler & Anger, P.C. By: William H. Anger, Paul G. Ulrich, Phoenix, Attorneys for Non–Party Respondents Cities of Chandler Glendale, Mesa, and Scottsdale.

Navajo Nation By: Stanley M. Pollack, Window Rock and Greene, Meyer & McElroy, P.C. By: Scott McElroy, Alice E. Walker, Boulder, Attorneys for Non–Party Respondent Navajo Nation.

Hopi Indian Tribe Kykotsmovi By: A. Scott Canty—and—Sonosky Chambers Sachse & Endreson Washington, D.C. By: Harry R. Sachse Reid P. Chambers Attorneys for Non–Party Respondent Hopi Indian Tribe.

Barrow & Barrow Flagstaff By: Irene F. Barrow—and—Whiteing & Thompson Boulder, By: Jeanne S. Whiteing Colorado Attorneys for Non–Party Respondent San Juan Paiute Tribe.

Williams & Janov, P.C. Albuquerque, By: Susan M. Williams New Mexico Attorneys for Non–Party Respondent Pueblo of Zuni.

Fennemore Craig Phoenix By: James W. Johnson Lauren J. Caster Attorneys for Non–Party Respondents Cyprus Climax Metals Co., Cyprus Christmas Mine Corp., Cyprus Miami Mining Corp., Cyprus Pima Mining Corp., Cyprus Sierrita Corp., and Cyprus Twin Buttes Corp.

Broening Oberg Woods Wilson & Cass Phoenix By: Marilyn D. Cage Attorneys for Non–Party Respondent City of Goodyear.

Meyer Hendricks Bivens & Moyes, P.L.C. Phoenix By: Lee H. Storey Attorneys for Non–Party Respondents City of Safford City of Flagstaff, Rio Rico Properties, Inc., and Rio Rico Utilities, Inc.

DeConcini McDonald Yetwin & Lacy, P.C. Tucson By: Jennele M. O'Hair Attorneys for Various Individual Non–Party Respondents.

Martinez & Curtis, P.C. Phoenix By: William P. Sullivan Attorneys for Non–Party Respondents Bella Vista Water Co., Cortaro Water Users Association, Cortaro–Marana Irrigation District, and Town of Gilbert.

Platt Hall & Lee, P.C. St. Johns By: Mitchel D. Platt Attorneys for Non–Party Respondents City of.St. Johns, City of Holbrook, Seven Springs Ranches, Earl Platt Ranches, and Leverton Investments.

## OPINION

FELDMAN, Justice.

¶ 1 We previously accepted jurisdiction of this special action challenging the constitutionality of two legislative measures that revise many portions of Arizona's surface water law. On remand, the trial judge held most of the statutory changes unconstitutional because they applied retroactively to affect vested property rights, thus violating the due process clause of article II, section 4 of the Arizona Constitution, or because they violated the separation of powers clause of article III of the Arizona Constitution. For the most part, we agree and affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Because "there is not enough water to meet everyone's demands, a determination of priorities and a quantification of the water rights accompanying those priorities must be made." *United States v. Superior Court/San Carlos Apache Tribe,* 144 Ariz. 265, 270, 697 P.2d 658, 663 (1985) (hereinafter *San Carlos II* ). The attempt to adjudicate all surface water rights began in 1974 when the Salt River Valley Water Users' Association filed a petition with the State Land Department for adjudication of its water rights under former A.R.S. §§ 45–231 to 45–245. *Id.* In 1979, those statutes were repealed and superseded by A.R.S. §§ 45–251 to 45–260. *Id.* In accordance with the statutory changes, Salt River's administrative proceeding was trans-

ferred to Maricopa County Superior Court, where it was consolidated with other petitions for adjudication of water rights in the Salt, Verde, and San Pedro Rivers. *In re Rights to the Use of the Gila River,* 171 Ariz. 230, 233, 830 P.2d 442, 445 (1992) (hereinafter *Gila River Adjudication I* ). Subsequently, the trial judge expanded the scope of the adjudication to include the Upper Agua Fria, Upper Gila, Lower Gila, and Upper Santa Cruz Rivers. *Id.* A similar proceeding is pending involving rights in the Little Colorado River. Today, more than 27,000 parties have been served and over 77,000 claims remain to be adjudicated in the Gila River and Little Colorado River adjudications.

¶ 3 In 1986, the trial judge entered an order that established procedures for managing this complex litigation and identified legal issues the court needed to resolve before finally adjudicating individual claims. *Id.* In September 1989, we issued a Special Procedural Order Providing for Interlocutory Appeals and Certifications designed to "provide a mechanism [for appellate] review [of] the important legal decisions of the trial court as promptly as practicable at the outset of the adjudication." *Id.* at 233 n. 2, 830 P.2d at 445 n. 2. Pursuant to this order, in December 1990 we granted interlocutory review of six issues. We have published opinions addressing issues 1 and 2. *See Gila River Adjudication I,* 171 Ariz. 230, 830 P.2d 442 (issue 1—holding that the special filing and service procedures adopted by the trial court for the general adjudication satisfied due process requirements ); *In re General Adjudication of All Rights to Use Water in the Gila River System and Source,* 175 Ariz. 382, 857 P.2d 1236 (1993) (issue 2—holding that the trial court adopted an incorrect method for identifying wells presumed to be pumping appropriable subflow as opposed to groundwater, which is excluded from the rule of prior appropriation) (hereinafter *Gila River Adjudication II* ). Issues 4 and 5, which pertain to alleged application of federal reserved rights to groundwater, have been argued and submitted to the court for decision.[1]

1. For a more detailed history of the adjudication, see *Arizona v. San Carlos Apache Tribe,* 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983) (*San*

*Carlos I* ); *San Carlos II,* 144 Ariz. at 270–71, 697 P.2d at 663–64; *Gila River Adjudication I,* 171 Ariz. at 232–33, 830 P.2d at 444–45; *Gila*

¶ 4 Although a number of issues have been or soon will be resolved, many more legal and evidentiary issues remain pending on appeal or in the trial court. Nevertheless, in 1995—in the midst of this adjudication and the Little Colorado River proceeding—the Legislature enacted House Bills 2276 and 2193, which revised numerous statutes dealing with surface water rights and the general adjudication process. The San Carlos Apache Tribe, Tonto Apache Tribe, and Yavapai Apache Tribe—Camp Verde Reservation (the Apache Tribes) filed a special action in this court challenging the constitutionality of the enactments. We accepted jurisdiction and remanded the matter to the trial court, specifically Judge Susan R. Bolton, for briefing and oral argument.[2] We later amended the remand order to direct Judge Bolton "to identify and resolve, subject to the special appellate procedures applicable to this case," the issues that needed to be decided immediately, and to "determine each constitutional issue."

¶ 5 In the trial court, the Apache Tribes, the Little Colorado River Tribes (Navajo Nation, Hopi Tribe, Pueblo of Zuni, and San Juan Southern Paiute Tribe), and the United States (collectively the federal parties) challenged the legislation. The Salt River Project, Cyprus Mining entities, and the State Land Department (collectively the state parties), on behalf of themselves and numerous other parties, filed briefs supporting it. Judge Bolton heard oral argument and, in accordance with the 1989 Special Procedural Order, certified her decision to this court. We accepted the certification, ordered briefing, and granted extended oral argument. We have jurisdiction pursuant to article VI, section 5(3) of the Arizona Constitution.

## DISCUSSION

### A. Preliminary matters

¶ 6 Several of the parties have suggested that we not confine ourselves to the constitutional issues addressed by Judge Bolton but instead decide the constitutionality of each legislative enactment. We decline the invitation and confine ourselves to determining those issues properly raised by the parties and necessary to our determination of the validity of the challenged legislation.

¶ 7 Except as otherwise noted in ¶¶ 10, 28, 54, 59, 60, and 62, all constitutional findings in this opinion are based on state law. Federal cases are used only for guidance and do not themselves compel the results we reach today. *See Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983).

¶ 8 To keep the opinion as brief as possible while still providing a complete picture of the changes made by the legislative enactments, we attach the full legislative text of HB 2276 and HB 2193 as Appendices A and B. The appendices show each statute in the previous and revised versions.

¶ 9 Because the trial court's ruling involved pure questions of law, our review is *de novo. See, e.g., Scottsdale Unified Sch. Dist. No. 48 v. KPNX Broadcasting Co.,* 191 Ariz. 297, 300, 955 P.2d 534, 537 (1998).

### B. Standard of review

¶ 10 The Apache Tribes contend that we should apply strict scrutiny to this legislation and that the parties supporting the enactments have the burden to prove constitutionality. The state parties, on the other hand, urge us to apply what has been described as the presumption that all statutes are constitutional. *See Chevron Chem. Co. v. Superior Court,* 131 Ariz. 431, 438, 641 P.2d 1275, 1282 (1982); *Rochlin v. State,* 112 Ariz. 171, 174, 540 P.2d 643, 646 (1975). Judge Bolton rejected the strict scrutiny claim and presumed the amendments constitutional. Strict scrutiny is the standard applied to an equal protection challenge of a statute that "is aimed at limiting a fundamental right" or "discriminates among individuals based on a 'suspect class.'" *Arizona Downs v. Arizona Horsemen's Found.,* 130 Ariz. 550, 555, 637 P.2d 1053, 1058 (1981). We read the amendments as regulating property

---

*River Adjudication II,* 175 Ariz. at 384–85, 857 P.2d at 1238–39.

**2.** Judge Bolton replaced retired Judge Stanley Z. Goodfarb, who presided over the Gila River adjudication for fourteen years.

rights in water rather than limiting fundamental rights and cannot conclude that these statutes dealing with property rights discriminate against a suspect class. Therefore, we agree with Judge Bolton's rejection of the equal protection claims and, as a matter of federal law, see no need to apply strict' scrutiny.

¶ 11 The Apache Tribes also argue that *Arizona v. San Carlos Apache Tribe,* 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983) (hereinafter *San Carlos I* ), requires a "strict standard" of review when a state statute is claimed to violate the federal constitutional rights of the Apache Tribes. We do not read *San Carlos I* to require such a standard and agree with Judge Bolton's rejection of the strict standard, whatever that may mean. We assume, as always, that legislative enactments are constitutional. We do not lightly conclude to the contrary.

## C. Retroactivity

### 1. *General principles*

¶ 12 All of the parties agree that procedural changes may be applied retroactively, but the federal parties contend the enactments at issue are unconstitutional because they change the legal effect of past acts and therefore are "substantive retroactive laws" that "impair vested property rights and violate substantive due process under the Arizona and U.S. Constitutions." Conversely, the state parties insist that all substantive changes are prospective only, intended to deal with the future legal consequences of future acts. Moreover, the state parties argue, some of what may appear to be retroactive substantive changes are merely clarifications of previously ambiguous law. To support their position, the state parties point to Section 25(A), the Declaration of policy and intent of HB 2276, which states:

The legislature finds and declares that the interests of the citizens of this state will be best served if the statutorily created process for the adjudication of surface water rights is amended to simplify and

expedite pending litigation. The legislature also finds that ambiguities exist in the current statutes relating to surface water rights and that the clarification of these statutes will assist all parties by reducing the need for the courts to resolve current ambiguities. The legislature recognizes that the general stream adjudications are complicated and have the potential to profoundly affect the property rights of the water users of this state. It is the intention of this act to clarify existing laws and adopt changes that are equitable and fair to all parties, that comply with the letter and the spirit of the McCarran Amendment (43 United States Code section 666),[3] that provide long-term security to all water rights holders within this state and that streamline the adjudication process and remove undue burdens of litigation from the parties.

¶ 13 There would be little constitutional impediment if the statutes that follow this Declaration did no more than simplify and expedite pending litigation by amending the adjudication process, but Section 24 of HB 2276 gives us a different picture of the Legislature's intent, stating:

Unless otherwise specifically provided, this act applies to:

1. All rights to appropriable water *initiated or perfected on or before the effective date of this act* and any rights subsequently initiated or perfected.

2. All *general stream adjudications pending* on the effective date of this act and all future general stream adjudications initiated pursuant to title 45, chapter 1, article 9, Arizona Revised Statutes.

(Emphasis added.) Judge Bolton concluded that this language clearly and unequivocally demonstrated the Legislature's intention to apply both substantive and procedural changes retroactively. After considering both the language of Section 24 and the complete text of the statutes, we must agree.

¶ 14 Declarations of intent may be helpful in interpretation, but the text of a

---

**3.** For a history and description of the McCarran Amendment, see *San Carlos II,* 144 Ariz. at 272– 73, 697 P.2d at 665–66.

measure must be considered first and foremost. *See City of Chicago v. Environmental Defense Fund,* 511 U.S. 328, 339, 114 S.Ct. 1588, 1594, 128 L.Ed.2d 302 (1994) ("It is not unusual for legislation to contain diverse purposes that must be reconciled, and the most reliable guide for that task is the enacted text."); *Kriz v. Buckeye Petroleum Co.,* 145 Ariz. 374, 377, 701 P.2d 1182, 1185 (1985) ("To arrive at legislative intent, this Court first looks to the words of the statute."). It is true, as the state parties argue, that § 1–244 requires an express statement of retroactive intent before a statute will be considered retroactive. Here, however, several of the statutes cannot sensibly be applied prospectively. *See, e.g.,* § 45–187; § 45–188(A) and (B) discussed *infra* at ¶¶ 20–22. This, we believe, indicates an overall legislative intent to apply all of the statutes retroactively.

¶ 15 That the Legislature *intended* the statutes to apply retroactively does not end our analysis. A statute that is merely procedural may be applied retroactively. *Hall v. A.N.R. Freight Sys.,* 149 Ariz. 130, 139, 717 P.2d 434, 443 (1986). A statute may not, however, "attach[ ] new legal consequences to events completed before its enactment." *Landgraf v. USI Film Prods.,* 511 U.S. 244, 270, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994). In other words, legislation may not disturb vested substantive rights by retroactively changing the law that applies to completed events. *Hall,* 149 Ariz. at 139, 717 P.2d at 443. A vested right "is actually assertable as a legal cause of action or defense or is so substantially relied upon that retroactive divestiture would be manifestly unjust." *Id.* at 140, 717 P.2d at 444. We agree with Judge Bolton's conclusion that the water rights of the parties in the Gila and Little Colorado general stream adjudications are vested substantive property rights. Also, because there is not enough water for all, priority in use is itself an attribute of an appropriative property right to surface water. As Judge Bolton noted, the purpose of the adjudications is to quantify, prioritize, and document by decree existing priority rights to appropriable and federally reserved water. This state has always followed the doctrine of prior appropriation of surface waters—first in time, first in right.

*See Clough v. Wing,* 2 Ariz. 371, 17 P. 453 (1888). Thus, the legal effect of acts that resulted in acquisition and priority of water rights cannot be changed by subsequent legislation. Any implementation of Section 24's retroactive intent to affect vested substantive rights to water would violate the due process guarantee of article II, section 4 of the Arizona Constitution. *See Hall,* 149 Ariz. at 139, 717 P.2d at 443.

¶ 16 The state parties insist, however, that "water rights, like other property rights, continue to be subject to regulation by the legislature even after vesting," and argue that this legislation does nothing more than impose such regulatory measures. To hold otherwise, they say, would effectively freeze the law by precluding the Legislature from enacting future regulations. It is true that even vested rights may be regulated. Today's holding, however, does not prevent future regulations and does not freeze the law. The Legislature may certainly enact laws that apply to rights vested before the date of the statute. Such laws, however, may only change the legal consequences of *future* events. *See Tower Plaza Invs. v. DeWitt,* 109 Ariz. 248, 251–52, 508 P.2d 324, 327–28 (1973) (holding that the Legislature may tax future rents in leases made prior to enactment of statute). All other considerations permitting, the Legislature may provide, for instance, that a right vested before the statute is effective will be affected by the specified event occurring after the statute is effective. The Legislature may not, however, change the legal consequence of events completed before the statute's enactment. *See id.* For example, the Legislature cannot revive rights that have been lost or terminated under the law as it existed at the time of an event and that have vested in otherwise junior appropriators. *See, e.g., Hall,* 149 Ariz. at 139, 717 P.2d at 443; *United States v. Klein,* 80 U.S. (13 Wall.) 128, 146, 20 L.Ed. 519 (1871) (separation of powers prohibits Congress from prescribing rules of decision in pending cases). We therefore agree with Judge Bolton that those provisions of HB 2276 that retroactively alter vested substantive rights violate the due process clause, article II, section 4 of the Arizona Constitu-

tion. Accordingly, we analyze the statutes for true retrospective effect. For ease of reference, we list the statutes in numerical order.

### 2. Specific statutes

■ ¶ 17 As amended, § 45–141(B) prohibits a finding of forfeiture or abandonment when water has been used on less than all the land to which the right was appurtenant. This provision creates a new protection against a finding of abandonment or forfeiture that did not exist in the former § 45–141. The consequences of failure to make use of appropriated water on all of the appropriator's land must be determined on the basis of the law existing at the time of the event, not on the basis of subsequently enacted legislation that may change the order of priority. Cf. Klein, 80 U.S. (13 Wall.) at 148. Section 45–141(C) eliminates any possibility of forfeiture for rights initiated before June 12, 1919. If applied retrospectively, this too creates a new and unconstitutional protection for pre–1919 water rights that may have been forfeited and vested in others under the law existing prior to 1995. Forfeiture and resultant changes in priority must be determined under the law as it existed at the time of the event alleged to have caused the forfeiture.

■ ¶ 18 Section 45–151(D) [4] provides that the availability of alternative water sources does not affect a surface water right. No such provision existed under the prior statutory law, and it cannot be retroactively added to the statute or engrafted in the common law. Section 45–151(E) (contained in both HB 2276 and HB 2193) states that water rights appropriated on federal land belong to the person who first made beneficial use of the water; § 45–151(F) states that water on federal land may be used at any location; and § 45–156(E) provides that failure to obtain approval for a change in use does not result in abandonment, forfeiture, or loss of priority. These are all new enactments that cannot be retroactively applied to affect rights vested under the interpretation of statutes or common law existing at the time of the events. Among the over 70,000 pending claims, it is likely that some, perhaps many, will depend on the meaning of the law as it existed at the time of the events at issue. The resolution of such issues and consequent effect on priority must be determined by interpretation and application of the then-existing statutory and common law. Substantive rights and consequent priorities cannot be determined by statutes subsequently enacted, especially those enacted while the case is pending before the court. See Hall, 149 Ariz. at 138, 717 P.2d at 442; Tower Plaza Invs., 109 Ariz. at 251–52, 508 P.2d at 327–28.

■ ¶ 19 Section 45–162(B) provides that a delay by the Department of Water Resources (DWR) in processing a water right application does not affect priority. As we read the old and new versions of the statute, the priority date under both is the application's filing date. If this new provision changes anything at all, it does so retroactively.

■ ¶ 20 Section 45–187 recognizes an appropriator's acquisition of water rights through adverse possession until May 21, 1974.[5] The previous version of the statute recognized adverse possession claims only until 1919.[6] Thus, rights may now be

---

4. Because we find this statute impermissibly affects vested substantive rights, we do not address the argument that it also violates separation of powers.

5. The 1995 version of § 45–187 reads:
 Beginning on May 21, 1974, no rights to the use of public waters of the state may be acquired by adverse use or adverse possession as between the person and the state, or as between one or more persons asserting the water right, but nothing contained herein affects the validity of a claim filed under this article based on prior adverse use or adverse possession.

6. The former version of § 45–187 reads:
 No rights to the use of public waters of the state may be acquired by adverse use or adverse possession as between the person and the state, or as between one or more persons asserting the water right; but nothing contained herein shall be deemed to diminish or enhance the validity of a claim filed under this article originating prior to the effective date of chapter 164 of the Laws of 1919.

claimed by adverse possession for the period from 1919 through 1974, to the possible detriment of users whose statutory appropriative rights accrued after 1919. This new version of § 45–187 cannot sensibly be read to apply to the consequences of events occurring after March 17, 1995—the date the statute took effect.

¶ 21 These changes to § 45–187 present a paradigm of unconstitutional retrospective application. The changes not only apply to previous conditions but also change the consequences of past events. As the previous versions of § 45–187 recognized, before 1919 water rights could be acquired by adverse possession. Whether a water right could be acquired by adverse possession between 1919 and 1974 is not entirely clear. For instance, *Tattersfield v. Putnam* suggests that to initiate and perfect a water right, certain statutory formalities were required after 1919. 45 Ariz. 156, 174, 41 P.2d 228, 235 (1935). Accordingly, one could not appropriate water by mere beneficial use. *Id.* It could thus be argued that one who failed to meet the formalities in the 1919 water code—applying for a permit and recording the certificate—could not have acquired a right by adverse possession after 1919. On the other hand, at least one case suggests otherwise. *Gibbons v. Globe Development, Nevada, Inc.*, expressly states that a "water right may be obtained by adverse possession." 113 Ariz. 324, 325, 553 P.2d 1198, 1199 (1976). *Gibbons* held that there was a triable issue of fact whether a water right by adverse possession had been established. *Id.* at 326, 553 P.2d at 1200. It did not specify the year the adverse use began. Whether a right could be acquired by adverse possession between 1919 and 1974 must be determined by the law in effect at the time, not by the 1995 statute. The power to define existing law in adjudicating disputes rests exclusively within the judicial branch. *Chevron Chem. Co.*, 131 Ariz. at 440, 641 P.2d at 1284.

¶ 22 Sections 45–188(A), (B), and (C) likewise impermissibly affect vested substantive rights. The 1974 version of § 45–188 provided simply that a water right could be lost through abandonment or forfeiture (nonuse, without sufficient cause for five years), without reference to the date the right was initiated. Subsections (A) and (B) of the 1995 version, however, limit nonuse forfeiture to those rights initiated on or after June 12, 1919.[7] The effect of the 1995 statutory amendment is to negate the forfeiture provisions of the 1974 statute. Given that some claims may be based on rights or priorities acquired through forfeiture of otherwise senior rights after 1974, the provisions added to § 45–188 were undoubtedly intended to alter the legal consequences of preenactment events. Some otherwise junior appropriators may have already advanced in priority due to forfeited water rights. The forfeited senior rights cannot be revived by legislation passed in 1995.

¶ 23 Subsection (C) of § 45–188 insulates from abandonment and forfeiture water rights appurtenant to lands within an irrigation district, water users' association, or the like so long as an operable delivery system is maintained. This, too, did not exist before HB 2276 and must share the same fate as subsections (A) and (B). These provisions all alter the law regarding the creation, appropriation, retention, priority, abandonment, or forfeiture of previously vested water rights and are thus substantive changes. They are retroactive because they may alter the vested consequences of past events. Legislation that changes the rules governing the legal consequences of past events violates article II, section 4 of the Arizona Constitution. *Cf. Chevron Chem. Co.*, 131 Ariz. at 438–40, 641 P.2d at 1282–84.

¶ 24 The Legislature added in § 45–189(E) the following five new exceptions to post–1919 forfeiture for nonuse:

8. The reconstruction, replacement, reconfiguration or maintenance of water storage or distribution facilities, using reasonable diligence including the failure to

---

7. Abandonment arises from nonuse with intent to abandon, while forfeiture results from nonuse, for a specified period of time, regardless of inten-

tion. *Gila Water Co. v. Green*, 29 Ariz. 304, 306, 241 P. 307, 308 (1925).

divert or store water as a result of those activities.

9. An agreement between the holder of a reservoir right and the United States, this state or any city, county or other municipal or governmental entity to leave a minimum pool of water in the reservoir for the benefit of the public for recreation, fish and wildlife purposes.

10. Use of the water appropriated on less than all of the land to which the right is appurtenant.

11. An agreement between the operator of a reservoir and a person entitled to the use of water stored in the reservoir allowing the water to be withdrawn over a period of time exceeding five years.

12. A written agreement between two or more appropriators of water pursuant to which one or more of the appropriators agrees to forbear the exercise of its water right, in whole or in part, for the benefit of one or more appropriators within the same river system and source if the appropriator who forbears exercise of the right continues the beneficial use associated with the right.

The last exception on the list (No. 13)— "[a]ny other reason that a court of competent jurisdiction deems would warrant nonuse"— remains unchanged. Judge Bolton held that because the statute has always provided a nonexclusive list of sufficient reasons for nonuse, the new exceptions were valid so long as they were applied prospectively only. We agree that the Legislature may prospectively add to this nonexclusive list. These new exceptions, however, applying to events occurring between 1919 and 1995, obviously were intended to affect and alter the legal consequences of conduct occurring before the enactment date. As a result, they retroactively affect vested substantive rights. Again, the effect of acts that occurred before the effective date of HB 2276 must be determined by the law that existed at the time of the event. The Legislature may not retroactively determine the law. *See Hall*, 149 Ariz. at 138, 717 P.2d at 442.

■ ¶ 25 The Apache Tribes urge this court to hold § 45–262 unconstitutional. The statute, which did not exist prior to HB 2276, provides:

> Contributions of surface water by an appropriator to an Indian water rights settlement shall not diminish the appropriator's decreed water right pursuant to section 45–257 unless a severance and transfer of that right are specifically provided for in the settlement agreement, but the appropriator shall not use water available under its decreed right if the water is actually being used by an Indian tribe pursuant to the settlement agreement. The decree entered for the appropriator shall include any contributions that are made and that are designated as for the benefit of the tribe, subject to the provisions of the settlement agreement.

Although Judge Bolton did not address this statute in her ruling, we conclude that it cannot stand. It is not limited to future settlement agreements. Consequently, this statute, like those previously discussed, is invalid because it may retroactively alter the consequences of past events.

### 3. "Reopener" provisions

■ ¶ 26 The federal parties also contend the "reopener" provisions are invalid. Section 45–182(A) allows persons claiming a state law water right to file their statements of claim no later than ninety days before the date of DWR's final report for the subwatershed in which the claimed right is located. The previous deadline set by the first adjudication statute was June 30, 1979. Similarly, § 45–254(E) allows claimants to file statements or amend existing statements without leave of court up to ninety days before publication of DWR's final report for the subwatershed or federal reservation. After this time has expired but before the special master's hearings conclude, claimants may assert a claim for water use within that subwatershed or reservation without leave of court by filing a statement with DWR's director and a notice of filing with the court. When the special master has completed the hearings and has filed a report with the court, further claim filing is not permitted except with the court's permission.

¶ 27 As Judge Bolton concluded, the Legislature could have determined that the general adjudication's purpose of quantifying and prioritizing all water rights would not be well served if the 1979 filing deadline remained intact. Claimants will now be given a reasonable opportunity to properly make their claims. The reopener provisions are a legitimate exercise of legislative power and are thus constitutional. *See, e.g., Davis v. Valley Distributing Co.,* 522 F.2d 827, 830–32 (9th Cir.1975) (upholding application of extended statutory limitations period to claim that would otherwise have been barred by prior limitations period); *Chevron Chem. Co.,* 131 Ariz. at 438–40, 641 P.2d at 1282–84. Consequently, we affirm Judge Bolton's determination that the following statutes are procedural and may be applied retroactively: § 45–182(A), (D), and (E), reopening the time for filing statements of claims of water rights existing before March 17, 1995; and § 45–254(E), (F), and (G), providing a procedure for late filing of statements of claim and amended statements.

¶ 28 Similarly, Judge Bolton determined that § 45–263(A), which provides for the applicability of state law, is procedural. It reads: "State law, including all defenses available under state law, applies to the adjudication of all water rights initiated or perfected pursuant to state law." Assuming the propriety of Judge Bolton's characterization of § 45–263(A) as a procedural statute, we note that to some extent water rights affecting federal land are governed by both state and federal law. *See, e.g., Cappaert v. United States,* 426 U.S. 128, 96 S.Ct. 2062, 48 L.Ed.2d 523 (1976). Thus, this provision is constitutional, but only to the extent it is interpreted consistently with the supremacy clause, article VI, clause 2 of the United States Constitution.

**D. Prospective application**

¶ 29 Notwithstanding the statutes' text, the state parties urge us to uphold all changes on a truly prospective basis, interpreting and applying the statutes to affect only the future consequences of future events. While we could do this with many of the statutes, we reluctantly decline to do so.

Ordinarily we interpret statutes in a manner that will enable us to uphold their constitutionality. *Business Realty v. Maricopa County,* 181 Ariz. 551, 559, 892 P.2d 1340, 1348 (1995). In this case, however, we believe the entire body of legislation was intended to apply both retroactively and prospectively. Further, we find a significant portion of HB 2276 unconstitutional under the separation of powers doctrine of article III of the Arizona Constitution. Consequently, we have no way of knowing if the Legislature would have enacted these substantial changes had it known that the original, single body of law would be considerably changed. That decision is for the Legislature. Assuming the statutes are constitutional on other grounds, the Legislature may, if it so decides, reenact those statutes we find to be retrospective so that they apply only to future consequences of *future* events. *See Tower Plaza Invs.,* 109 Ariz. at 252, 508 P.2d at 328.

**E. Ambiguity and clarification**

¶ 30 Judge Bolton concluded that HB 2276 may be considered in determining the meaning of prior law so long as a court finds the prior law ambiguous. We disagree. Under some circumstances, a newly enacted statute may clarify ambiguities in an earlier version. *See, e.g., State v. Sweet,* 143 Ariz. 266, 271, 693 P.2d 921, 926 (1985) (amendment enacted one year after original version of statute was clarification rather than change); *City of Mesa v. Killingsworth,* 96 Ariz. 290, 297, 394 P.2d 410, 414 (1964) (amendment enacted one year after statute was used for clarification). This useful canon of statutory construction can assist with interpretation when both statutes were passed by the same Legislature or perhaps within a few years of each other. But to suggest that the 1995 Legislature knows and can clarify what the 1919 or 1974 Legislatures intended carries us past the boundary of reality and into the world of speculation. We refuse to cross that border.

¶ 31 Our previous cases support that conclusion. When an amendment is enacted "after a considerable length of time and constitutes a clear and distinct change of the

operative language, it is an indication of an intent to change rather than clarify the previous statute." *O'Malley Lumber Co. v. Riley,* 126 Ariz. 167, 169, 613 P.2d 629, 632 (App.1980) (*abrogated on other grounds by Hayes v. Continental Ins. Co.,* 178 Ariz. 264, 269 n. 5, 872 P.2d 668, 673 n. 5 (1994)). Given the passage of time and the significant additions to and departures from prior law, HB 2276 is more akin to a change than a clarification. *See, e.g., Ormsbee v. Allstate Ins. Co.,* 177 Ariz. 146, 146–47, 865 P.2d 807, 807–08 (1993). The legislation may not, therefore, be given weight in interpreting the meaning of statutes enacted almost eighty— or even twenty-five—years earlier.

## F. Separation of powers—legislative directions of factual findings

¶ 32 The federal parties argue that a number of the statutory changes violate the separation of powers clause, article III of the Arizona Constitution, by changing both substantive and evidentiary law in midstream of a pending case. Other statutes, they argue, similarly violate the constitution by dictating the court's findings on factual matters. Thus, the Legislature has attempted to control both process and result, depriving the court of its constitutional authority to find facts and to define and apply the law.

¶ 33 The concepts of due process and separation of powers are somewhat intertwined.

> It is manifest that it was not left to the legislative power to enact any process which might be devised. The article is a restraint on the legislative as well as on the executive and judicial powers of the government, and cannot be so construed as to leave congress free to make any process "due process of law," by its mere will.

*Murray's Lessee v. Hoboken Land & Improvement Co.,* 59 U.S. (18 How.) 272, 276, 15 L.Ed. 372 (1855). The United States Supreme Court long ago addressed this issue in a case in which Congress changed the rules of the game at what may be described as halftime. The Court previously had held that those who had been in rebellion during the Civil War could reclaim or obtain compensation for seized property if they could prove they received a presidential pardon. Such a pardon would satisfy the statutory condition that the claimant had not been in rebellion. *Klein,* 80 U.S. (13 Wall.) at 133, citing *United States v. Padelford,* 76 U.S. (9 Wall.) 531, 19 L.Ed. 788 (1869). The claimant, Klein, had been pardoned and thus prevailed on his claim, but while the case was pending on appeal, Congress enacted a law effectively negating *Padelford.* The statute provided that absent express exculpatory language, a pardon was admissible as proof of participation in rebellion but inadmissible as evidence of non-participation. *Id.* at 133–34. With the tables turned in this manner, Klein would not have been entitled to compensation because the statute deprived the courts of jurisdiction and required dismissal. The Supreme Court made short shrift of the government's motion to dismiss.

> It seems to us that this is not an exercise of the acknowledged power of Congress to make exceptions and prescribe regulations to the appellate power.... What is this but to prescribe a rule for the decision of a cause in a particular way? ... Can we do so without allowing one party to the controversy to decide it in its own favor? Can we do so without allowing that the legislature may prescribe rules of decision to the Judicial Department of the government in cases pending before it? We think not.... We must think that Congress had inadvertently passed the limit which separates the legislative from the judicial power.

*Id.* at 146–47.[8]

¶ 34 Similarly, we believe any attempt by the Arizona Legislature to adjudicate pending cases by defining existing law and applying it to fact is prohibited by article III of the Arizona Constitution, which describes the distribution of powers of our government as follows:

> The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the

---

**8.** For a thorough exposition of this and related principles, see Erwin Chemerinsky, *When do* *Lawmakers Threaten Judicial Independence?,* TRIAL, Nov. 1998, at 62.

Executive, and the Judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others.

With these principles in mind, we analyze Judge Bolton's ruling on the separation of powers issues.

### 1. De minimis use—A.R.S. § 45–258

 ¶ 35 An entirely new § 45–258 provides for summary adjudication of certain statutorily defined *de minimis* uses. Stockponds with a capacity of fifteen acre-feet or less, domestic uses of three acre-feet or less, small business uses of three acre-feet or less, and stock watering uses of one acre-foot or less "shall be deemed" *de minimis* and are to be "summarily adjudicated and incorporated into the final decree." The parties estimate these *de minimis* uses include between two-thirds and four-fifths of the total general adjudication claims. Parties whose claims are adversely affected by another's statutorily required *de minimis* finding will be able to object to water right attributes decreed as *de minimis* only in post-decree severance and transfer or change of use proceedings, or in post-decree enforcement actions. *See* new § 45–258(F). Moreover, those who claim that a *de minimis* use interferes with their water right have the burden of proving the water diverted or withdrawn would otherwise be available to satisfy their right, a burden similar to the futile call doctrine.[9] Because there were no statutorily prescribed *de minimis* uses prior to enactment of HB 2276, the water master previously could find different *de minimis* standards for particular watersheds. The master's findings of fact were made after contested hearings in which the parties were able to present evidence on the *de minimis* issue. *See Gila River Adjudication II*, 175 Ariz. at 394, 857 P.2d at 1248 ("[T]rial court may adopt a *rationally based*

exclusion for wells having a *de minimis* effect on the river system." (emphasis added)).

¶ 36 The state parties contend that § 45–258 is an attempt to focus the general adjudication proceedings on larger claims by establishing a summary adjudication procedure for those claimants with relatively small annual usage. The federal parties argue that the *de minimis* provisions violate the separation of powers and the due process clauses of the Arizona Constitution.

 ¶ 37 The Legislature has the power to enact and create law within constitutional bounds. *Chevron Chem. Co.*, 131 Ariz. at 440, 641 P.2d at 1284. The power to define existing law, including common law, and to apply it to facts rests exclusively within the judicial branch. *Id.* Although some blending of powers is inevitable given today's complex government, the separation of powers doctrine ensures "sufficient checks and balances to preserve each branch's core functions." *J.W. Hancock Enters., v. Arizona State Registrar of Contractors*, 142 Ariz. 400, 405, 690 P.2d 119, 124 (App.1984). Article III is violated at the point where the legislative enactment unreasonably limits the judiciary's performance of its duties. *See San Carlos II*, 144 Ariz. at 278, 697 P.2d at 671. The court of appeals has developed a test for analyzing separation of powers claims. *See J.W. Hancock Enters.*, 142 Ariz. at 405–06, 690 P.2d at 124–25. We adopted this test in *State ex rel. Woods v. Block*, finding that it provides the necessary flexibility yet still maintains the goal of the separation of powers doctrine. 189 Ariz. 269, 276, 942 P.2d 428, 435 (1997). Thus, we evaluate the federal parties' article III claims using the following four factors as guidance: (1) the essential nature of the power exercised; (2) the Legislature's degree of control in exercising the power; (3) the Legislature's objective; and (4) the practical consequences of the action. *Id.* at 277–78, 942 P.2d at 436–37.

---

9. The futile call doctrine provides that a senior appropriator may prevent a junior appropriator from diverting water only when doing so will be of some benefit to the senior. F. Trelease, Water Law 105 (3d ed.1979). For example, if water is allowed to flow past the junior's point of diversion, but the stream is dry at the senior's point of diversion, shutting off ("calling") the junior will not cause the water to reach the senior. Thus, the senior's endeavor of calling the junior is futile. *See* Harrison C. Dunning, *The 'Physical Solution' in Western Water Law*, 57 U. Colo. L. Rev. 445, 483 n.116 (1986).

¶ 38 The essential nature of the power exercised in § 45–258 is judicial. This statute directs DWR and the courts to decree *de minimis* use based on a bright-line, legislative standard. No provision exists for the presentation of evidence regarding what would be a true *de minimis* use given the amount of water actually available. For example, under § 45–258, one acre-foot would be *de minimis* whether diverted from the Gila River or from a spring with a yearly flow of only two acre-feet. As Judge Bolton noted, "the legislature is in no position to determine the amount of water that is *de minimis* for domestic, business, stockpond and stockwatering uses in numerous [and vastly differing] watersheds throughout the State." This conclusion, she held, must be made after determining contested facts and applying the law to those facts, which is strictly a judicial function. We agree.

¶ 39 The Legislature took complete control under § 45–258 and required the court to decree certain uses as *de minimis*. The court has no power to hear the facts and make the ultimate conclusion in the context of each watershed. Nor does the ability to challenge the *de minimis* use in post-decree enforcement proceedings save this provision. The extended delay would violate due process by depriving the parties of the opportunity to be heard in a meaningful time and in a meaningful manner. *See* Ariz. Const. art. II, § 4; *see also Huck v. Haralambie*, 122 Ariz. 63, 65, 593 P.2d 286, 288 (1979); *Salas v. Arizona Dep't of Econ. Sec.*, 182 Ariz. 141, 143, 893 P.2d 1304, 1306 (App.1995).

¶ 40 The Legislature may have had the laudatory objective of relieving the smaller water users of the financial and temporal burdens associated with the general adjudication proceedings. The practical effect of the enactment, however, was to remove all possibility of meaningful judicial conclusions

based on findings of fact. This the Legislature cannot do. *Compare Klein*, 80 U.S. (13 Wall.) at 146–48, *with Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421, 429–32, 15 L.Ed. 435 (1855). We agree with Judge Bolton's conclusion that § 45–258 violates separation of powers. The following provisions are also invalid, as they have no meaning or effect without § 45–258: § 45–182(B)(4), which provides that the requirement of filing a statement of claim shall not apply to rights determined to be *de minimis*; and § 45–256(A)(5), which requires the director to identify those claims or uses that are *de minimis* as prescribed by § 45–258.[10]

### 2. On-farm water duties

¶ 41 Judge Bolton further concluded that § 45–256(A)(6), which establishes on-farm water duties based on elevation, violates separation of powers. Again, we agree. Depending on elevation, the statute mandates a finding of irrigation water quantities needed for particular crops and requires that such quantities be assigned in DWR's report to the master or court. The court must then incorporate those quantities in the decree unless rebutted by a preponderance of the evidence. § 45–256(A)(6). We recognize that DWR may recommend that the master adopt and apply uniform quantities, but it may do so only after investigating the irrigation uses. DWR's function is to provide technical assistance to the master and trial judge. *See San Carlos II*, 144 Ariz. at 279, 697 P.2d at 672. Assistance, however, does not include reporting statutorily mandated factual findings based on a statute rather than factual investigation. As Judge Bolton noted, the factual determination of quantities needed for certain crops and elevations must be judicially determined on the basis of evidence; it cannot be legislatively mandated.

10. Because we conclude § 45–258 violates article III of the Arizona Constitution, we need not decide whether it also violates the McCarran Amendment, thus causing the court to lose jurisdiction over the federal parties. We caution, however, that limiting litigation of contested facts until post-decree enforcement proceedings would raise serious McCarran Amendment concerns. The McCarran Amendment "waive[s] sovereign immunity with respect to state court adjudication of water rights claimed by the United States for all lands to which the United States held title, including Indian Reservations." *San Carlos II*, 144 Ariz. at 272, 697 P.2d at 665. In return, the amendment requires *all water rights* in a particular river system to be adjudicated in one comprehensive, *inter sese* proceeding. *See* 43 U.S.C.A. § 666 (1986); *San Carlos I*, 463 U.S. at 551, 103 S.Ct. at 3205.

Thus, § 45–256(A)(6) violates separation of powers for the same reasons the *de minimis* provisions violate the doctrine. The Legislature cannot dictate to the master, court, or DWR the factual conclusions that underlie decrees.

### 3. Maximum capacity rules

¶ 42 Section 45–256(A)(7) attempts to set the quantity of an appropriative right by requiring DWR to measure an appropriator's water diversions (the amount of water appropriated) by the maximum theoretical capacity of the diversion facility. Similarly, it provides that reservoir storage quantities be set at the maximum controlled capacity of the reservoir. These findings must then be "presumed correct by the master and the court and incorporated in· the decree" unless rebutted by evidence offered by a claimant. § 45–256(A)(7). As Judge Bolton noted, the actual diversions may never have been close to the diversion facility's maximum theoretical capacity, and some reservoir storage quantities may never have neared the reservoir's maximum capacity. The statute prevents the court from basing its judgment on the amount of water actually diverted or stored and thus beneficially used. The Legislature may not require a court to reach and decree factual conclusions based on legislative determinations rather than actual facts. This is particularly so when the statute affects pending case decisions. *See Klein*, 80 U.S. (13 Wall.) at 146–48. As with the *de minimis* use and on-farm water duties, § 45–256(A)(7) violates separation of powers and must fail.

### 4. Settlement agreements

¶ 43 Section 45–257(C) provides that settlement agreements made by claimants must be decreed by the court. The statute does not give the court authority to review the agreement. In an *inter sese* proceeding such as this adjudication, a court cannot be required to incorporate an agreement that may affect the availability of water for other claimants or interfere with senior rights. Because of the scarcity of water, this may be the result even though the statute states that the "agreement shall be binding only among [its] parties." § 45–257(C). We concur with Judge Bolton's conclusion that this provision violates the separation of powers doctrine.

### 5. Prior filing presumptions

¶ 44 Section 45–261(A)(2) and (4) provide that DWR, the master, and the court shall accept information in prior filings as true unless DWR finds it clearly erroneous. In addition, conflicting information must be resolved favorably to the claimant unless DWR finds it clearly erroneous. Subsection (B) imposes on the objecting party the burden to prove the facts contained in the prior filing incorrect by clear and convincing evidence. We agree with Judge Bolton that these provisions, too, violate separation of powers. It is the ultimate responsibility of the court, not the government agency providing technical assistance, to determine the credibility of information in prior filings and what is clearly erroneous. DWR must be able to investigate all evidence before making a recommendation regarding water right attributes. Information contained in prior filings may constitute some factual evidence of a claimant's water right. *See* Ariz. R. Evid. 803(6) to (10), (14) to (16). It is simply one item of evidence, however, and cannot be given determinative effect by virtue of legislative fiat. In general, the power to make rules, including rules of evidence, resides in the judicial branch. Ariz. Const. art. VI, § 5(5); *Slayton v. Shumway*, 166 Ariz. 87, 89, 800 P.2d 590, 592 (1990). We will recognize a statutory rule when it is "reasonable and workable" and when it supplements rather than contradicts our rules. *State ex rel. Collins v. Seidel*, 142 Ariz. 587, 591, 691 P.2d 678, 682 (1984). Here, however, the statute does much more than supplement our rules. It precludes the court from determining the credibility of the information in the prior filings. This it cannot do and is therefore invalid.

### 6. Role of Arizona Department of Water Resources

¶ 45 Section 45–256(B) provides that DWR's report "shall list all information

that is obtained by the director and that reasonably relates to the water right claim or use investigated." The report must also include the director's proposed water right attributes for each water right claim or use investigated. If no water right finding is proposed, DWR's report shall so indicate. Objections are permitted, but they must specifically address DWR's recommendations. Objections not in compliance must be dismissed with prejudice.

¶ 46 We follow Judge Bolton's analysis and uphold § 45–256(B). DWR has considerable expertise in the investigation and reporting of water rights, claims, and uses. *See San Carlos II,* 144 Ariz. at 279, 697 P.2d at 672 (noting that DWR's most important task is to provide technical assistance during adjudication proceedings). In preparing hydrographic survey reports (HSRs), DWR conducts an extensive historical review of all water right claims and uses, performs field investigations, and reviews appropriate treaties, filings, and all other documentation of the water right, claim, or use. Unlike the sections discussed above, § 45–256(B) does not *dictate* DWR's findings or *require* the court to accept or decree its HSR. But when DWR's investigation discloses water right attributes, or their absence, DWR is allowed to make the appropriate recommendation. This type of quasi-judicial function is constitutionally permitted of agencies such as DWR, so long as judicial review is permitted. *See, e.g., Cactus Wren Partners v. Arizona Dep't of Bldg. & Fire Safety,* 177 Ariz. 559, 562–64, 869 P.2d 1212, 1215–17 (App. 1994) (holding that department's hearing and resolving of landlord/tenant disputes does not usurp judicial authority so long as judicial review is available as critical check on administrative power). We realize in this case DWR is acting as a technical advisor *and not as an administrative agency,* but we believe the concerns are similar. Under § 45–256(B), claimants are permitted to file timely, specific written objections to DWR's recommendations and have a fair and reasonable opportunity to present evidence supporting or opposing the recommendations. The final adjudication still resides in the court. So long as DWR and the court are not required to make predetermined factual

findings or decree certain rights, the statute does not violate due process or separation of powers.

■ ¶ 47 New subsections (C), (D), (E), (F), and (G), which concern the evidentiary use of parts of the HSR, have also been added to § 45–256. If the claim or use described in the report is 500 acre-feet or less, the information describing that water right claim shall be summarily admitted into evidence, and in the absence of conflicting evidence, the report's proposed attributes are to be deemed correct and incorporated into the decree. If conflicting evidence is presented, however, DWR's proposed attributes are given the weight deemed appropriate by the master and the court. If the claim or use described in the report is more than 500 acre-feet, the HSR shall not be summarily admitted into evidence or given any presumption of correctness. Those portions of the report that do not contain DWR's recommendations are not summarily admitted, though they may be offered in evidence if relevant.

■ ¶ 48 We have already determined that separation of powers principles prevent the Legislature from directing that the court decree certain facts or water right attributes without any opportunity for review. Thus, those provisions of § 45–256(D) that require the director's proposed attributes to "be deemed correct and incorporated into the decree" cannot be upheld. The remaining portions of § 45–256(C), (D), (E), (F), and (G) are valid because they do not mandate a particular conclusion by the court; thus the evidentiary admission of the HSR for the court's consideration is a lawful exercise of legislative power *in this statutorily created action. See Seidel,* 142 Ariz. at 591, 691 P.2d at 682 (under some circumstances, court will recognize "reasonable and workable" statutory rules that do not conflict with judicial rules of evidence or procedure). The HSR may be admitted in evidence under the conditions stated in § 45–256(C) through (G) and given whatever weight, if any, the court deems appropriate.

#### 7. Changes regarding the special master

¶49 New § 45–255(A) gives the superior court judge the power to appoint special masters, and subsection (B) provides that if filing fees are exhausted, a line item appropriation from the state general fund will support the master. We appointed the current special master, John Thorson, for both adjudications under the previous statute. He has served since 1990, and as far as we are aware, there are neither grounds nor plans for a change in this regard. Obviously, the Legislature cannot direct the change of a judicial officer in a pending case, and we do not interpret the new statute to so require. If an additional or a new master must be appointed in the future, he or she may be appointed pursuant to the new version of § 45–255(A).

¶50 Section 45–257(A)(2) requires that the master file a report with the court on all determinations, recommendations, findings of fact, or conclusions of law issued. Written objections may be filed within sixty days (180 days if the report covers an entire subwatershed or reservation). Again, we find this a valid exercise of legislative power over a procedural matter in an action created by statute. We therefore affirm Judge Bolton's ruling upholding § 45–255(A) and (B), and § 45–257(A)(2).

#### 8. Public trust

¶51 Section 45–263(B) states:

> The public trust is not an element of a water right in an adjudication proceeding held pursuant to this article. In adjudicating the attributes of water rights pursuant to this article, the court shall not make a determination as to whether public trust values are associated with any or all of the river system or source.

¶52 Judge Bolton upheld the Legislature's prohibition against considering the public trust doctrine in the adjudications. We disagree. The public trust doctrine is a constitutional limitation on legislative power to give away resources held by the state in trust for its people. *See Arizona Ctr. for Law in the Public Interest v. Hassell*, 172 Ariz. 356, 364–66, 837 P.2d 158, 166–68 (App. 1991) (applying both the separation of powers doctrine and the gift clause, article 9, section 7 of the Arizona Constitution). The Legislature cannot order the courts to make the doctrine inapplicable to these or any proceedings. While the issue has been raised before the master, we do not yet know if the doctrine applies to all, some, or none of the claims. That determination depends on the facts before a judge, not on a statute. It is for the courts to decide whether the public trust doctrine is applicable to the facts. The Legislature cannot by legislation destroy the constitutional limits on its authority. *See id.* at 366–69, 837 P.2d at 168–71.

### G. Equal protection

¶53 The Apache Tribes challenge various provisions of HB 2276 on the grounds that they deny them equal protection under both the federal and state constitutions. The Apache Tribes argue that the *de minimis* provisions, the presumption of correctness accorded prior filings, and the requirement that certain DWR recommendations and settlements be incorporated into the decree without court review deny them a fundamental right—access to the court. Thus, they contend, the statutes violate equal protection. We have already held those provisions unconstitutional, however, as a violation of Arizona's separation of powers doctrine. In light of that holding, we agree with Judge Bolton that the equal protection arguments are moot.

¶54 Additionally, the Apache and Little Colorado River Tribes argue that § 45–263(A), which declares state law applicable to the adjudication of water rights initiated or perfected pursuant to state law, violates equal protection. The Tribes contend that this provision will defeat the federal law claims asserted by the United States or Indian tribes. Judge Bolton viewed this as a supremacy clause issue rather than an equal protection dispute. We agree. We construe this entire statute under state law, including state constitutional principles, *subject to* the supremacy clause. If federal and state law conflict, federal law clearly is supreme. *See* U.S. Const. art. VI, cl. 2. This point has

been and, of course, remains a key principle in the adjudications. As noted earlier, we do not find any of the statutes in violation of equal protection principles.

## H. House Bill 2193

¶ 55 Several provisions of HB 2193 relate to sections of HB 2276 that we have held unconstitutional earlier in this opinion and are thus also invalid. These include: § 45-151(D), (E), and (F), which involve water from alternative sources and rights to water on land owned by the United States; § 45-257(E), which involves the unconstitutional evidentiary presumptions of § 45-261; and § 45-257(F), which requires adjudication of rights to water diverted on federal land in accordance with § 45-151(E) and (F). We affirm Judge Bolton's ruling except in one detail. Her ruling allowed for prospective application of §§ 45-151 and 45-257(F). As previously discussed, we do not know if the Legislature would have enacted the isolated statutes to apply prospectively only. Thus, we strike the statutes in their entirety and leave to the Legislature the decision whether to reenact those provisions, assuming, of course, that the statutes are constitutional on other grounds.

¶ 56 New § 37-321.01(A) provides that a permit for the right to use water on state land shall be issued in the name of the state of Arizona except in the following three circumstances:

1. If the place of use is located on state land, but the point of diversion is located on patented land, the certificate or permit shall be issued to the owner of the patented land.

2. If the place of use is located on state land, but the point of diversion is located on land owned by the United States, the permit or certificate shall be issued to the lessee of the state land.

3. If the water right was perfected under the law applicable at the time that the right was initiated by the lessee or its predecessors in interest for use on land that was owned by the United States before that land was designated for transfer to the state of Arizona, the certificate or permit shall be issued to the lessee of the state land.

¶ 57 Subsection (B) of § 37-321.01 allows the state land commissioner and the person asserting the right to stipulate to ownership of the water right, and the stipulation must be accepted by DWR. Subsection (C) requires that the commissioner must be given the opportunity to review and object to the permit or certificate before DWR approves it. Subsection (D) makes clear that one does not have the right to lease state land based solely on ownership of a water right acquired under § 37-321.01. For a lessee of state land whose water right was perfected before the land was designated for transfer, subsection (E) prohibits severance from its place of use on state land and transfer for use on other land without the written consent of the commissioner. The commissioner may withhold consent if the use of the state land for grazing purposes is dependent on the water right that is proposed to be transferred. If consent is refused, the lessee's successor in interest or the state must pay compensation to the lessee who owns the water right if that lessee can no longer use the water right because of the commissioner's refusal to consent to the transfer.

¶ 58 We agree with Judge Bolton's finding that these amendments are facially constitutional. Despite some contentions that § 37-321.01 is an unconstitutional giveaway of state property rights, Judge Bolton correctly found it is not. The statute merely regulates form and use of certificates; it does not change substantive law affecting acquisition of rights.

¶ 59 Judge Bolton also rejected the United States' argument that HB 2193 allows DWR to retroactively cancel vested water rights held by the United States or perfected in accordance with state law. The statute requires an application for transfer of a permit or certificate and provides the United States with notice and an opportunity for a hearing with review by the court. No vested water rights owned by the United States will be canceled. Nor could they be. *See Cappaert*, 426 U.S. at 138, 96 S.Ct. at 2069 ("[W]hen the Federal Government withdraws its land from the public domain and reserves

it for a federal purpose, the Government, by implication, reserves appurtenant water then unappropriated to the extent needed to accomplish the purpose of the reservation."). Only if a claimant files an application claiming actual ownership of the permit or certificate is there any possibility of water rights certificates being transferred. These will be transferred only if the evidence establishes that the claim is correct. Whether the law requires that the right be held by the United States or by the claimant will be determined first in an administrative hearing and then in the judicial adjudication proceeding and in accordance with applicable state and federal law. The applicable law regarding federal reserved rights will be applied. *See id.* We agree with Judge Bolton that this special action is not the appropriate place to review whether federal law may conflict with state law on the perfection of water rights on federal land. The appropriate time to determine that issue is when the facts present the issue for decision. If such a case presents itself, federal law unquestionably would supersede any conflicting state law. *See id.*

¶ 60 The Apache Tribes also argue that § 37–321.01 is unconstitutional because it purports to authorize appropriation or transfer of water from Indian reservation lands. Apparently, the Apache Tribes interpret "federal land" to include Indian reservation land. But there is a material difference between land *owned* by the federal government and land *held in trust* by the federal government for Indian tribes. *See San Carlos II,* 144 Ariz. at 272, 697 P.2d at 665. The reference in HB 2193 to federal lands can only be interpreted to refer to land *owned* by the United States, not an attempt to authorize incursions on Indian lands to appropriate tribal water. Any such attempt would violate article XX, section 4 of the Arizona Constitution, as well as federal law.

¶ 61 The Legislature enacted additional provisions necessary for the efficient implementation of § 37–321.01. For example, § 45–153(C) is needed to conform the permits or certificates to the rules established by § 37–321.01 and is thus a valid exercise of legislative power. Section 45–164(C) provides for the reissuance of previously issued permits or certificates to conform to § 37–321.01. This statute is also valid as it includes procedures for notice, objections, hearings, and appeal to the superior court. Section 45–257(D) requires that the water right be adjudicated in compliance with § 37–321.01 and is thus valid.

¶ 62 In summary, HB 2193 is constitutional on its face, although some of its provisions may refer to statutes found unconstitutional. Whether its application in a particular dispute is always constitutional cannot be decided until the specific facts of such a case are brought before the court. Whether those portions of HB 2193 that govern the issuance of a certificate or a permit for a water right on federal land are in conflict with federal law will await a specific case in which such an issue is raised. If the circumstances then establish that federal law requires modification or precludes issuance, reissuance, or transfer of the water right, federal law will prevail.

## CONCLUSION

¶ 63 We conclude that the following statutes are invalid:

A.R.S. § 45–141(B) prohibiting a finding of forfeiture or abandonment when water is used on less than all the land to which the right is appurtenant.

A.R.S. § 45–141(C) eliminating any possibility of forfeiture for rights initiated before June 12, 1919.

A.R.S. § 45–151(D) providing that the availability of alternative sources of water does not affect a surface water right.

A.R.S. § 45–151(E) (contained in both HB 2276 and HB 2193) stating that water rights appropriated on federal land belong to the person who first made beneficial use of the water.

A.R.S. § 45–151(F) stating that water on federal land may be used at any location.

A.R.S. § 45–156(E) providing that failure to obtain approval for a change in use does not result in abandonment, forfeiture, or loss of priority.

A.R.S. § 45–162(B) resulting in relation back of priority date to the date of application to appropriate.

A.R.S. § 45–182(B)(4) involving the invalidated *de minimis* statute.

A.R.S. § 45–187 making acquisition of rights for adverse possession available only to rights perfected prior to May 21, 1974.

A.R.S. § 45–188(A) and (B) making abandonment the only basis for relinquishment of a water right initiated before June 12, 1919.

A.R.S. § 45–188(C) insulating from abandonment and forfeiture water rights appurtenant to lands within an irrigation district, water users' association or the like so long as an operable delivery system is maintained.

A.R.S. § 45–189(E)(8)—(12) adding additional sufficient causes of nonuse.

A.R.S. § 45–256(A)(5) involving the invalidated *de minimis* statute.

A.R.S. § 45–256(A)(6) and (7) involving the on-farm water duties and maximum capacity rules, and that portion of § 45–256(D) that precludes judicial review of DWR director's proposed attributes.

A.R.S. § 45–257(C) providing that settlement agreements entered into by claimants must be decreed by the court.

A.R.S. § 45–257(E) involving the unconstitutional evidentiary presumptions of § 45–261.

A.R.S. § 45–257(F) requiring adjudication of rights to water diverted in federal land in accordance with § 45–151(E) and (F).

A.R.S. § 45–258 mandating certain uses as *de minimis*.

A.R.S. § 45–261(A)(2), (4) and (B) involving the prior filing presumptions.

A.R.S. § 45–262 regarding the Indian water rights settlements.

A.R.S. § 45–263(B) making the public trust doctrine inapplicable to these proceedings.

¶ 64 We uphold the following provisions:

A.R.S. § 37–321.01 regarding the rights to use water on state land.

A.R.S. § 45–153(C) involving permits and certificates issued under § 37–321.01.

A.R.S. § 45–164(C) providing for the reissuance of previously issued permits or certificates to conform to § 37–321.01.

A.R.S. § 45–182(A), (D) and (E) reopening the time for filing statements of claims of water rights existing before March 17, 1995.

A.R.S. § 45–254(E), (F) and (G) providing procedure for late filings of statements of claimants and amended statements in the general stream adjudications.

A.R.S. § 45–255(A) giving the power to appoint special masters to the superior court judge.

A.R.S. § 45–255(B) funding special master's compensation if the filing fees are exhausted.

A.R.S. § 45–256(B), (C), (D), (E), (F) and (G) expanding the responsibilities of DWR and providing for certain evidentiary rules on admissibility of the report and presumptions accorded the information therein [excepting the preclusion of judicial review in A.R.S. § 45–256(D) ].

A.R.S. § 45–257(A)(2) changing the time for objections to the master's reports and requiring written reports.

A.R.S. § 45–257(D) requiring that the water right be adjudicated in compliance with § 37–321.01.

A.R.S. § 45–263(A) providing for the applicability of state law to adjudication of all water rights initiated or perfected pursuant to state law.

¶ 65 The trial judge and master shall proceed with the adjudication, applying the conclusions reached in this opinion.

THOMAS A. ZLAKET, Chief Justice, WILLIAM E. DRUKE, Chief Judge, NOEL FIDEL, Judge and JOHN PELANDER, Judge, concur.

Vice Chief Justice CHARLES E. JONES, Justice FREDERICK J. MARTONE, and Justice RUTH V. McGREGOR recused themselves. Pursuant to Ariz. Const. art. VI, § 3, Chief Judge WILLIAM E. DRUKE of Division Two, Arizona Court of Appeals, Judge NOEL FIDEL of Division One, Arizona Court of Appeals, and Judge JOHN PELANDER of Division Two, Arizona Court of Appeals, were designated to sit in their stead.

APPENDIX A

## Chapter 9—421R—S Ver of HB2276

**Reference Title: surface water code amendments**

### AN ACT

AMENDING SECTIONS 45–101, 45–113, 45–141,45–151, 4–156, 45–161, 45–162, 45–181, 45–182, 45–184, 45–185, 45–187, 45–188, 45–189, 45–251 AND 45–253 THROUGH 45–257, ARIZONA REVISED STATUTES; AMENDING TITLE 45, CHAPTER 1, ARTICLE 9. ARIZONA REVISED STATUTES, BY ADDING SECTIONS 45–258 AND 45–261 THROUGH 45–264; AMENDING SECTION 45–272, ARIZONA REVISED STATUTES; RELATING TO WATERS.

Be it enacted by the Legislature of the State of Arizona:

Section 1. Section 45–101, Arizona Revised Statutes, is amended to read:

*45–101. Definitions*

In this title. unless the context otherwise requires.

**1. "APPROPRIATOR" MEANS THE PERSON OR PERSONS INITIATING OR PERFECTING THE RIGHT TO USE APPROPRIABLE WATER BASED ON STATE LAW, OR THE PERSON'S SUCCESSOR OR SUCCESSORS IN INTEREST.**

*1.* 2. "Department" means the department of water resources.

*2.* 3. "Director" means the director of water resources. who is also the director of the department.

*3.* 4. "Effluent" means water that has been collected in a sanitary sewer for subsequent treatment in a facility that is regulated pursuant to sections 49–361 and 49–362. Such water remains effluent until it acquires the characteristics of groundwater or surface water.

*4.* 5. "Groundwater" means water under the surface of the earth regardless of the geologic structure in which it is standing or moving. Groundwater does not include water flowing in underground streams with ascertainable beds and banks.

*5.* 6. "Interstate stream" means any stream constituting or flowing along the exterior boundaries of this state, and any tributary originating in another state or foreign country and flowing into or through this state.

*6.* 7. "Riparian area" means a geographically delineated area with distinct resource values, that is characterized by deep-rooted plant species that depend on having roots in the water table or its capillary zone and that occurs within or adjacent to a natural perennial or intermittent stream channel or within or adjacent to a lake, pond or marsh bed maintained primarily by natural water sources. Riparian area does not include areas in or adjacent to ephemeral stream channels, artificially crated stockponds, man-made storage reservoirs constructed primarily for conservation or regulatory storage. municipal and industrial ponds or man-made water transportation, distribution, off-stream storage and collection systems.

*7.* 8. "Sanitary sewer" means *a* ANY pipe or other enclosed conduit that carries, among other substances. any water-carried wastes from the human body from residences. commercial buildings, industrial plants or institutions.

*8.* 9. "Surface water" means the waters of all sources, flowing in streams, canyons, ravines or other natural channels, or in definite underground channels, whether perennial or intermittent, floodwater, wastewater or surplus water, and of lakes, ponds and springs on the surface. For the purposes of administering this title. surface water is deemed to include central Arizona project water.

Sec. 2. Section 45–113, Arizona Revised Statutes. is amended to read:

*45–113. Fees: refunds; administrative fund*

A. Except as otherwise prescribed, the director shall establish by rule and shall collect reasonable fees to cover the costs of administrative services and expenses.

B. A permanent administrative fund is established in an amount of not more than ten thousand dollars for the purpose of making

refunds on any fees erroneously paid to the department. Except as provided in subsection D of this section, at any time the administrative fund contains a balance of less than ten thousand dollars, the director may deposit in this fund monies collected by the director from any fees which may be subject to a claim for a refund. The monies in the administrative fund are exempt from lapsing under section 35-190.

C. If the director determines that a fee, including a fee collected pursuant to section 45-611, has been erroneously paid during the same fiscal year or during any prior fiscal year, the director shall make an administrative adjustment or a refund, without interest, from the administrative fund to the current holder of the right, application or registration for which the fee was paid.

D. This section does not apply to fees paid or payable under section 45-254, *subsection F* or section 45-255, subsection B.

Sec. 3. Section 45-141, Arizona Revised Statutes, is amended to read:

*45-141. Public nature of waters of the state; beneficial use; reversion to state; actions not constituting abandonment or forfeiture*

A. The waters of all sources, flowing in streams, canyons, ravines or other natural channels, or in definite underground channels, whether perennial or intermittent, flood, waste or surplus water, and of lakes, ponds and springs on the surface, belong to the public and are subject to appropriation and beneficial use as provided in this chapter.

B. Beneficial use shall be the basis, measure and limit to the use of water. AN APPROPRIATOR OF WATER IS ENTITLED TO BENEFICIALLY USE ALL OF THE WATER APPROPRIATED ON LESS THAN ALL OF THE LAND TO WHICH THE WATER RIGHT IS APPURTENANT, AND THIS BENEFICIAL USE OF THE WATER APPROPRIATED DOES NOT RESULT IN THE ABANDONMENT OR FORFEITURE OF ALL OR ANY PORTION OF THE RIGHT.

C. Except as otherwise provided in this title or in title 48, when the owner of a right to the use of water ceases or fails to use the water appropriated for five successive years, the right to the use shall cease, and the water shall revert to the public and shall again be subject to appropriation. THIS SUBSECTION OR ANY OTHER STATUTORY FORFEITURE BY NONUSE SHALL NOT APPLY TO A WATER RIGHT INITIATED BEFORE JUNE 12, 1919.

D. Underground water storage, pursuant to chapter 3.1 of this title, for future beneficial use of waters appropriated pursuant to this chapter does not constitute an abandonment or forfeiture.

E. THE FOLLOWING WATER EXCHANGE ARRANGEMENTS OR SUBSTITUTIONS DO NOT CONSTITUTE AN ABANDONMENT OR FORFEITURE OF ALL OR ANY PORTION OF A RIGHT TO USE SURFACE WATER:

1.

Exchanging surface water for groundwater, effluent, COLORADO RIVER WATER, INCLUDING WATER DELIVERED THROUGH THE CENTRAL ARIZONA PROJECT, or another source of surface water pursuant to chapter 4 of this title, *or substituting poor quality*

2. SUBSTITUTING

groundwater, effluent, COLORADO RIVER WATER, INCLUDING WATER DELIVERED THROUGH THE CENTRAL ARIZONA PROJECT, or another source of surface water for surface water *does not constitute abandonment or forfeiture of any right to use surface water.*

Sec. 4. Section 45-151. Arizona Revised Statutes, is amended to read:

*45-151. Right of appropriation; permitted uses: water rights in stockponds*

A. Any person *or,* the state of Arizona or a political subdivision thereof may appropriate unappropriated water for domestic, municipal, irrigation, stock watering, water power, recreation, wildlife, including fish, nonrecoverable water storage pursuant to section 45-833.01 or mining uses, for his personal use or

for delivery to consumers. The person *or,* the state of Arizona or a political subdivision thereof first appropriating the water shall have the better right.

B. To effect the beneficial use, the person *or,* the state of Arizona or a political subdivision thereof appropriating the water may construct and maintain reservoirs, storage facilities pursuant to chapter 3.1 of this title, dams, canals, ditches, flumes and other necessary waterways.

C. A water right in a stockpond, certified pursuant to article 10 of this chapter, shall be recognized as if such water had been appropriated pursuant to this article.

D. **The validity of and the right to exercise a water right obtained in accordance with state law shall not be diminished, impaired or otherwise affected because other water is or may be available to the appropriator from an alternative right or source to satisfy the same use.**

E. **The right to water appropriated on lands owned by the United States shall be held by the person who first effects the beneficial use of the water appropriated and by the person's successor. This subsection shall not be construed to preclude the United States from being the holder of a right if the United States first effects the beneficial use.**

F. **A water source that is located on land owned by the United St TATES AND THAT HAS BEEN OR MAY BE APPROPRIATED UNDER STATE LAW MAY BE BENEFICIALLY USED ON ANY LAND WHETHER OR NOT OWNED BY THE UNITED STATES.**

Sec. 5. Section 45–156, Arizona Revised Statutes, is amended to read:

*45–156. Legislative authorization for appropriation of water to generate power; change in use*

A. An application for appropriation of waters of a stream within the state for generating electric energy in excess of twenty-five thousand horsepower, or an application for a permit to build a dam for generating hydroelectric energy on a stream within the state in excess of twenty-five thousand horsepower, shall not be approved or granted unless authorized by an act of the legislature.

B. **EXCEPT AS OTHERWISE PRESCRIBED BY THIS SECTION,** a change in the use of water appropriated for domestic, municipal or irrigation uses shall not be made without approval of the director, and if the change contemplates generating hydroelectric energy or power of over twenty-five thousand horsepower, approval shall not be granted unless authorized by an act of the legislature.

C. The provisions of subsections A and B *of this section* requiring legislative authorization for the appropriation or use of water to generate electric energy in excess of twenty-five thousand horsepower and for the building of a dam for generating hydroelectric energy in excess of twenty-five thousand horsepower shall not apply to the generation of electricity by facilities constructed prior to January 1, 1985 as part of a federally authorized reclamation project or by an agricultural improvement district organized pursuant to title 48, chapter 17.

D. Subsection C *of this section* shall not affect the priority dates for facilities constructed prior to January 1, 1985, or the following components and appurtenant works:

1. New Waddell dam.

2. Cliff dam.

3. Increase in storage capacity of Roosevelt dam.

4. Modification of Stewart mountain dam.

E. **THE FAILURE TO OBTAIN THE APPROVAL OF THE DIRECTOR AS PRESCRIBED BY SUBSECTION B IS NOT GROUNDS FOR ENJOINING A PREVIOUSLY EFFECTED CHANGE IN USE, DOES NOT RESULT IN THE ABANDONMENT OR FORFEITURE OF THE ASSOCIATED WATER RIGHT AND DOES NOT RESULT IN THE ASSIGNMENT OF A LATER DATE OF PRIORITY FOR THAT RIGHT, PROVIDED THAT A CHANGE IN USE SHALL NOT BE RECOGNIZED IF THE DIRECTOR HAS DENIED AN APPLICATION FOR**

SUCH CHANGE PRIOR TO JANUARY 1, 1995. IF THERE IS NO APPLICATION PENDING OR IF THE DIRECTOR HAS TAKEN NO FINAL ACTION WITH RESPECT TO A CHANGE IN USE EFFECTED WITHOUT THE DIRECTOR'S APPROVAL, A COURT OF COMPETENT JURISDICTION MAY APPROVE, MODIFY OR DENY THE CHANGE IN USE IN ORDER TO COMPLETE AN ADJUDICATION OF WATER RIGHTS PURSUANT TO ARTICLE 9 OF THIS CHAPTER.

Sec. 6. Section 45–161, Arizona Revised Statutes, is amended to read:

*45–161. Applications for reservoir permits; secondary permits for water* `

A. Applications for reservoir permits shall be governed by this article, except that the lands proposed to be irrigated from the works need not be enumerated in the primary permit.

B. THE PERSON PROPOSING TO DEVELOP THE SUPPLY OF WATER OR TO COMPLETE THE NECESSARY WORKS SHALL FILE AN APPLICATION FOR A PRIMARY PERMIT THAT SETS FORTH THE PLANS AND SPECIFICATIONS FOR CONSTRUCTION OF THE RESERVOIR AND ASSOCIATED DIVERSION OR DELIVERY WORKS, IF ANY, ON COMPLETION OF CONSTRUCTION OR DEVELOPMENT OF THE SUPPLY OF WATER, THE HOLDER OF THE PRIMARY PERMIT SHALL FILE A NOTICE OF COMPLETION WITH THE DIRECTOR.

*B.* C. The person proposing to apply to a beneficial use the water stored in such reservoir shall file an application for a secondary permit, which shall refer to the reservoir as the supply of water and shall show that a written agreement has been entered into with the owners of the reservoir for a permanent interest in the reservoir sufficient for the purposes set forth in the application. When the beneficial use has been perfected under the secondary permit, the DIRECTOR SHALL ISSUE TO THE HOLDER OF THE SECONDARY PERMIT A final certificate of appropriation *shall issue and refer to*

THAT DESCRIBES both the conduit described in the secondary permit and the reservoir described in the primary permit.

D. IF THE DEVELOPMENT OF THE SUPPLY OF WATER AND THE COMPLETION OF THE PROPOSED WORKS ARE TO BE UNDERTAKEN BY THE SAME PERSON PROPOSING TO APPLY THE WATER TO A BENEFICIAL USE, THE PERSON SHALL FILE A SINGLE APPLICATION FOR A RESERVOIR PERMIT. IN PROCESSING AN APPLICATION FILED PURSUANT TO THIS SUBSECTION, THE DIRECTOR SHALL NOT ISSUE SEPARATE PRIMARY AND SECONDARY PERMITS BUT SHALL ISSUE A SINGLE RESERVOIR PERMIT FOR THE DEVELOPMENT OF THE SUPPLY OF WATER, CONSTRUCTION OF THE PROPOSED WORKS AND APPLICATION OF THE WATER TO A BENEFICIAL USE. WHEN THE BENEFICIAL USE HAS BEEN PERFECTED UNDER THE RESERVOIR PERMIT, THE DIRECTOR SHALL ISSUE TO THE HOLDER OF THE RESERVOIR PERMIT A FINAL CERTIFICATE OF APPROPRIATION THAT DESCRIBES BOTH THE CONDUIT AND THE RESERVOIR DESCRIBED IN THE RESERVOIR PERMIT.

*C.* E. If at any time it appears to the director, after a hearing, that the holder of the primary permit will not or cannot within a reasonable period develop the supply of water or complete the works, the director may, upon application of the holder of the secondary permit, permit such holder joint occupancy and use under the primary permit with the holder of the primary permit to the extent deemed advisable by the director, but such applicant shall pay to the holder of the primary permit a pro rata portion of the total cost of the works, which shall be based on the proportion of water used by the original and the additional users of such works.

F. NOTHING IN THIS SECTION OR IN SECTION 45–257, SUBSECTION B, PARAGRAPH I, SHALL BE CONSTRUED AS MODIFYING THE LAW OF PRIORITY OR THE REQUIREMENT OF SECTION 45–141, SUBSECTION B, THAT

**BENEFICIAL USE SHALL BE THE BA-SIS, MEASURE AND LIMIT TO THE USE OF WATER.**

Sec. 7. Section 45–162, Arizona Revised Statutes, is amended to read:

*45–162. Certificate of water right: time limitation on use of water for power purposes*

A. When it appears to the satisfaction of the director that an appropriation has been perfected and a beneficial use completed in accordance with the provisions of this article, the director shall issue to the applicant a certificate signed by the director and attested by the seal of the department. The certificate shall set forth the name and address of the owner of the right, the priority of date and the extent and purpose of the right and, if the water is for irrigation purposes, a description of the legal subdivisions of land to which the water is appurtenant. On receiving the certificate, the owner may transmit the certificate and the recording fee to the county recorder of the county in which such right is located, who shall record the certificate in a book kept for that purpose and immediately transmit the certificate to the owner.

B. Certificates for rights to the use of water for power development shall limit the right or franchise to a period of forty years from the date of application, subject to a preferred right of renewal under the laws existing at the date of expiration of the franchise or right. The right acquired by the appropriation shall date from filing the application with the director, **AND DELAYS IN THE PROCESSING OR GRANTING OF AN APPLICATION TO APPROPRIATE OR AN APPLICATION FOR A PERMIT TO CONSTRUCT OR ENLARGE A RESERVOIR DO NOT AFFECT THE VALIDITY OF THE APPROPRIATION OR THE DATE OF PRIORITY ASSIGNED TO THE APPROPRIATIVE RIGHT.**

Sec. 8. Section 45–181, Arizona Revised Statutes, is amended to read:

*45–181. Definitions*

In this article, unless the context otherwise requires:

1. "Beneficial use" includes but is not limited to, use for domestic, municipal, recreation, wildlife, including fish, agricultural, mining, stockwatering and power purposes.

2. "Person" means ~~an~~ ANY individual, partnership, association, public or private corporation, city or other municipality, county or *a* state agency, A RECOGNIZED INDIAN TRIBE and the United States of America when claiming water rights established under the laws of this state.

3. "Public waters" or "water" means waters of all sources flowing in streams, canyons, ravines or other natural channels or in definite underground channels, whether perennial or intermittent, flood, waste or surplus water, and of lakes, ponds and springs on the surface.

Sec. 9. Section 45–182. Arizona Revised Statutes, is amended to read:

A. EXCEPT AS PROVIDED BY SUBSECTIONS B AND E OF THIS SECTION, all persons WHO BEFORE THE EFFECTIVE DATE OF THIS AMENDMENT TO THIS SECTION WERE using *or* AND claiming the right to withdraw or divert and make beneficial use of public waters ~~o~~ of the state BASED ON STATE LAW, *except as provided in subsection B,* shall file not later than *June 30, 1979* NINETY DAYS BEFORE THE DATE OF THE FILING OF THE DIRECTOR'S FINAL REPORT PURSUANT TO SECTION 45–256 FOR THE SUBWATERSHED IN WHICH THE CLAIMED RIGHT IS LOCATED a statement of claim for each water right asserted, on a prescribed form. The filing by any person on behalf of its members or users shall constitute the required filing of the individual users under this section. *A recognized Indian tribe shall have until April 1, 1980, within which to make the filing required by this section.*

B. The requirement of the filing of a statement of claim shall not apply to any of the following:

1. Any water rights issued pursuant to a permit or certificate issued pursuant to law.

2. Rights acquired to the use of the mainstream waters of the Colorado river.

3. Rights acquired or validated by contract with the United States of America, court decree or other adjudication.

4. RIGHTS TO THE USE OF PUBLIC WATERS OF THE STATE THAT ARE DETERMINED TO BE DE MINIMIS PURSUANT TO SECTION 45–258.

C. The director succeeds to the administration of this article and may adopt such rules as may be necessary to do so. Such rules supersede those previously adopted by the state land department and the Arizona water commission relating to this article.

D. A PERSON WHO BEFORE THE EFFECTIVE DATE OF THIS AMENDMENT TO THIS SECTION WAS USING AND CLAIMED THE RIGHT TO WITHDRAW OR DIVERT AND MAKE BENEFICIAL USE OF PUBLIC WATERS OF THE STATE BASED ON STATE LAW AND WHO IS EXEMPT FROM FILING PURSUANT TO SUBSECTION B OF THIS SECTION IS PERMITTED TO FILE A STATEMENT OF CLAIM OF RIGHT UNDER THIS ARTICLE FOR EACH WATER RIGHT ASSERTED NOT LATER THAN NINETY DAYS BEFORE THE DATE OF FILING OF THE DIRECTOR'S FINAL REPORT PURSUANT TO SECTION 45–256 FOR THE SUBWATERSHED OR FEDERAL RESERVATION IN WHICH THE CLAIMED RIGHT IS LOCATED. ANY STATEMENT OF CLAIM OF RIGHT FILED PURSUANT TO THIS SECTION MAY BE AMENDED AT ANY TIME PRIOR TO NINETY DAYS BEFORE THE FILING OF THE DIRECTOR'S FINAL REPORT PURSUANT TO SECTION 45–256 FOR THE SUBWATERSHED OR FEDERAL RESERVATION IN WHICH THE CLAIMED RIGHT IS LOCATED.

E. WATER RIGHT CLAIMS MAY BE ASSERTED UNDER THIS ARTICLE FOR USES, DIVERSIONS OR WITHDRAWALS OF PUBLIC WATERS OF THE STATE BASED ON STATE LAW AND INITIATED AT ANY TIME BEFORE THE EFFECTIVE DATE OF THIS AMENDMENT TO THIS SECTION. A CLAIM MAY NOT BE ASSERTED UNDER THIS ARTICLE FOR USES, DIVERSIONS OR WITHDRAWALS OF PUBLIC WATERS OF THE STATE INITIATED ON OR AFTER THE EFFECTIVE DATE OF THIS AMENDMENT TO THIS SECTION. ANY PERSON WHO BEFORE THE EFFECTIVE DATE OF THIS AMENDMENT TO THIS SECTION FILED A STATEMENT OF CLAIM FOR A WATER RIGHT UNDER THIS ARTICLE IS NOT REQUIRED TO FILE ANOTHER STATEMENT OF CLAIM FOR THE SAME WATER RIGHT AFTER THE EFFECTIVE DATE OF THIS AMENDMENT TO THIS SECTION.

Sec. 10. Section 45–184, Arizona Revised Statutes, is amended to read:

*45–184. Waiver and relinquishment of water right*

Any person **WHO IS** claiming the right to diver or withdraw public waters of the state **BASED ON STATE LAW AND** who fails to file a statement of claim as provided in this article shall have waived and relinquished any right, title or interest in that right.

Sec. 11. Section 45–185, Arizona Revised Statutes, is amended to read:

*45–185. Filing of claim not deemed adjudication of right; presumption: exemption*

A. The filing of a statement of claim under this article does not constitute an adjudication of any claim to the right to the use of waters as between the person and the state, or as between one or more persons asserting the water rights, and the date of filing under this article shall have no effect upon the priority. of such rights. *Except as to the appropriability of the claimed water, such A* STATEMENT OF CLAIM IS NOT ADMISSIBLE IN EVIDENCE FOR THE PURPOSE OF DEMONSTRATING THAT WATER DIVERTED OR WITHDRAWN AND BENEFICIALLY USED IS APPROPRIABLE UNDER SECTION 45–141, SUBSECTION A, BUT A STATEMENT OF claim *shall be* IS admissible in evidence as a rebuttable presumption of the truth and accuracy of the contents of the claim.

B. Wells used to produce water exclusively for domestic or stock watering purposes are exempt from the provisions of this article, but the granting of this exemption shall not establish the presumption that a water right exists.

Sec. 12. Section 45–187. Arizona Revised Statutes, is amended to read:

*45–187. No rights acquired by adverse use or adverse possession*

**BEGINNING ON MAY 21, 1974,** no rights to the use of public waters of the state may be acquired by adverse use or adverse possession as between the person and the state, or as between one or more persons asserting the water right;, but nothing contained herein *shall be deemed to diminish or enhance* **AFFECTS** the validity of a claim filed under this article *originating prior to the effective date of chapter 164 of the Laws of 1919* **BASED ON PRIOR ADVERSE USE OR ADVERSE POSSESSION.**

Sec. 13. Section 45–188, Arizona Revised Statutes, is amended to read:

*45–188. Future rights acquired through appropriation; rights within service area of agricultural or municipal provider*

A. Any person **WHO IS** entitled to divert or withdraw public waters of the state through an appropriation *authorized under section 45–151* **INITIATED ON OR AFTER JUNE 12, 1919 AND EVIDENCED BY A CERTIFICATE OF WATER RIGHT ISSUED UNDER ARTICLE 5 OF THIS CHAPTER.** A court decree. **OR** previous possession or continued beneficial use **AND** who **INTENTIONALLY** abandons the use thereof, or who voluntarily fails, without sufficient cause, to beneficially use all or any part of the right to withdraw for any period of five successive years shall relinquish such right or portion thereof. The rights relinquished shall revert to the state, and the waters affected by such rights shall become available for appropriation to the extent they are not lawfully claimed or used by existing appropriators.

B. **ANY PERSON WHO IS ENTITLED TO DIVERT OR WITHDRAW PUBLIC WATERS OF THE STATE THROUGH AN APPROPRIATION INITIATED BEFORE JUNE 12,1919 AND EVIDENCED BY A NOTICE OF APPROPRIATION, A COURT DECREE, PREVIOUS POSSESSION OR CONTINUED BENEFICIAL USE OR ANY OTHER ACTION TAKEN IN ACCORDANCE WITH FEDERAL, STATE OR TERRITORIAL LAW EXISTING AT THE TIME OF THE APPROPRIATION AND WHO INTENTIONALLY ABANDONS ITS USE RELINQUISHES THAT RIGHT. THE RIGHTS RELINQUISHED REVERT TO THE STATE, AND THE WATERS AFFECTED BY THOSE RIGHTS BECOME AVAILABLE FOR APPROPRIATION TO THE EXTENT THEY ARE NOT LAWFULLY CLAIMED OR USED BY EXISTING APPROPRIATORS.**

C. **WATER RIGHTS APPURTENANT TO LANDS WITHIN THE EXTERIOR BOUNDARIES OF AN IRRIGATION DISTRICT, WATER USERS' ASSOCIATION, DITCH COMPANY OR SIMILAR PROVIDER OF WATER FOR AGRICULTURAL AND MUNICIPAL USES, OR WITHIN THE SERVICE AREA OF A MUNICIPAL PROVIDER OR A PRIVATE WATER COMPANY, ARE NOT SUBJECT TO ABANDONMENT OR FORFEITURE IF THE WATER PROVIDER AND ITS AGENTS MAINTAIN AN OPERABLE WATER DELIVERY SYSTEM WITHIN THAT DISTRICT OR SERVICE AREA WITH THE TOTAL CAPACITY TO DELIVER THE AMOUNT OF WATER APPROPRIATED.**

D. **IF A USE OR CLAIM IS SUBJECT TO FORFEITURE BY NONUSE, FAILURE BY THE APPROPRIATOR TO USE WATER WITHIN A FIVE YEAR PERIOD DOES NOT RESULT IN A FORFEITURE OF THE ASSOCIATED WATER RIGHT IF WATER USE IS RESUMED BEFORE THE OCCURRENCE OF THE EARLIER OF ANY OF THE FOLLOWING:**

1. **THE INITIATION OF PROCEEDINGS PURSUANT TO SECTION 45–189 TO DETERMINE WHETHER THE**

RIGHT HAS BEEN FORFEITED OR ABANDONED.

2. THE FILING BY A THIRD PARTY OF A STATEMENT OF CLAIMANT IN A GENERAL ADJUDICATION INSTITUTED PURSUANT TO ARTICLE 9 OF THIS CHAPTER THAT ASSERTS THE RIGHT TO USE WATER FROM THE STREAM IN WHICH THE SUBJECT NONUSE HAS OCCURRED.

3. THE ASSERTION BY A THIRD PARTY OF WRITTEN OBJECTIONS IN RESPONSE TO AN APPLICATION BY THE APPROPRIATOR TO SEVER AND TRANSFER THE RIGHT PURSUANT TO SECTION 45–172.

Sec. 14. Section 45–189, Arizona Revised Statutes, is amended to read:

*45–189. Reversion of rights due to nonuse: notice: hearing: order: exception*

A. When it appears to the director that a person entitled to the use of water has not beneficially used all or a portion of the water right for a period of five or more consecutive years, and it appears that the right has or may have reverted to the state because of such nonuse, as provided by section 45–141 AND SECTION 45–188, SUBSECTION A, the director shall notify such person to show cause at a hearing before the director why his right or portion of the right should not be declared relinquished.

B. The notice shall contain:

1. The time and place of the hearing as determined by the director.

2. A description of the water right, including the approximate location of the point of diversion, the general description of the lands or places where such waters were used, the water source, the amount involved, the purpose of use, *and* the apparent authority upon which the right is based AND THE FACTUAL BASIS FOR THE NOTICE TO SHOW CAUSE.

3. A statement that unless sufficient cause is shown the water right will be declared relinquished.

C. The notice shall be served by sending the notice by registered or certified mail to the last known address of the person and shall be mailed at least thirty days before the hearing.

D. The director shall, as soon as practicable after such hearing, make an order determining whether such water right has been relinquished and give notice to each party of the order by serving such persons by registered or certified mail at their last known addresses.

E. For the purposes of this section, SECTION 45–141, SUBSECTION C and section 45–188, SUBSECTION A, the following reasons shall be sufficient cause for nonuse:

1. Drought. or other unavailability of water.

2. Active service in the armed forces of the United States during military crisis.

3. Nonvoluntary service in the armed forces of the United States.

4. The operation of legal proceedings.

5. Federal, state or local laws imposing land or water use restrictions, or acreage limitations. or production quotas.

6. Compliance with an applicable conservation requirement established by the director pursuant to chapter 2, article 9 of this title.

7. With respect to a water right appropriated for an irrigation use. either of the following:

(a) Pendency of a proceeding before a court or the director to change the permitted use from irrigation to municipal or other uses pursuant to a court decree or section 45–156 or to sever the right from the land to which it is appurtenant and transfer it for municipal use pursuant to section 45–172.

(b) After a change in the permitted use from irrigation to municipal pursuant to a court decree or section 45–156 or 45–172, insufficient demand for the water by the municipal users.

8. THE RECONSTRUCTION, REPLACEMENT, RECONFIGURATION OR MAINTENANCE OF WATER STORAGE OR DISTRIBUTION FACILITIES, USING REASONABLE DILIGENCE INCLUDING THE FAILURE TO DIVERT OR

STORE WATER AS A RESULT OF THOSE ACTIVITIES.

9. AN AGREEMENT BETWEEN THE HOLDER OF A RESERVOIR RIGHT AND THE UNITED STATES, THIS STATE OR ANY CITY, COUNTY OR OTHER MUNICIPAL OR GOVERNMENTAL ENTITY TO LEAVE A MINIMUM POOL OF WATER IN THE RESERVOIR FOR THE BENEFIT OF THE PUBLIC FOR RECREATION, FISH AND WILDLIFE PURPOSES.

10. USE OF THE WATER APPROPRIATED ON LESS THAN ALL OF THE LAND TO WHICH THE RIGHT IS APPURTENANT.

11. AN AGREEMENT BETWEEN THE OPERATOR OF A RESERVOIR AND A PERSON ENTITLED TO THE USE OF WATER STORED IN THE RESERVOIR ALLOWING THE WATER TO BE WITHDRAWN OVER A PERIOD OF TIME EXCEEDING FIVE YEARS.

12. A WRITTEN AGREEMENT BETWEEN TWO OR MORE APPROPRIATORS OF WATER PURSUANT TO WHICH ONE OR MORE OF THE APPROPRIATORS AGREES TO FORBEAR THE EXERCISE OF ITS WATER RIGHT, IN WHOLE OR IN PART, FOR THE BENEFIT OF ONE OR MORE APPROPRIATORS WITHIN THE SAME RIVER SYSTEM AND SOURCE IF THE APPROPRIATOR WHO FORBEARS EXERCISE OF THE RIGHT CONTINUES THE BENEFICIAL USE ASSOCIATED WITH THE RIGHT.

8. 13. Any other reason that a court of competent jurisdiction deems would warrant nonuse.

Sec. 15. Section 45–251, Arizona Revised Statutes, is amended to read:

*45–251. Definitions*

In this article, unless the context otherwise requires:

1. "DOMESTIC USE" MEANS A SINGLE APPROPRIATIVE WATER RIGHT SERVING A RESIDENCE, OR MULTIPLE RESIDENCES UP TO A MAXIMUM OF THREE RESIDENTIAL CONNECTIONS, FOR HOUSEHOLD PURPOSES WITH ASSOCIATED IRRIGATION OF LAWNS, GARDENS OR LANDSCAPE IN AN AMOUNT OF NOT MORE THAN ONE–HALF ACRE PER RESIDENCE. DOMESTIC USE DOES NOT INCLUDE THE USE OF WATER DELIVERED TO A RESIDENCE OR MULTIPLE RESIDENCES BY A CITY, TOWN, PRIVATE WATER COMPANY, IRRIGATION PROVIDER OR A SPECIAL TAXING DISTRICT ESTABLISHED PURSUANT TO TITLE 48.

*1.* 2. "General adjudication" means an action for the judicial determination or establishment of the extent and priority of the rights of all persons to use water in any river system and source.

*2.* 3. "Person" means an individual, a partnership, a corporation, a municipal corporation, the state of Arizona or any political subdivision, the United States of America, an Indian tribe or a community or any other legal entity, public or private.

*3.* 4. "Potential claimant" means all persons claiming water rights or on whose behalf claims to water rights are asserted.

5. "PRIOR DECREE" MEANS ANY JUDGMENT OR DECREE ENTERED BY A COURT OF COMPETENT JURISDICTION THAT APPLIES TO THE WATER RIGHT CLAIM OR USE THAT IS SUBJECT TO ADJUDICATION.

6. "PRIOR FILING" MEANS A NOTICE OF APPROPRIATION RECORDED WITH THE COUNTY RECORDER OR THE RECORDER'S PREDECESSOR, AN APPLICATION TO APPROPRIATE FILED PURSUANT TO SECTION 45–152, A STATEMENT OF CLAIM FILED PURSUANT TO ARTICLE 7 OF THIS CHAPTER OR A CLAIM OF WATER RIGHT FILED PURSUANT TO ARTICLE 10 OF THIS CHAPTER, ANY OR ALL OF WHICH REASONABLY RELATE TO THE WATER RIGHT CLAIM OR USE THAT IS SUBJECT TO ADJUDICATION. FOR PURPOSES OF THE SUMMARY ADJUDICATION OF DE MINIMIS USES PRESCRIBED BY SECTION 45–258, PRI-

OR FILING INCLUDES A STATEMENT OF CLAIMANT FILED PURSUANT TO THIS ARTICLE.

*4.* 7. "River system and source" means all water appropriable under section 45–141 and all water subject to claims based upon federal law.

8. "SMALL BUSINESS USE" MEANS A SINGLE APPROPRIATIVE WATER RIGHT SERVING ONE BUSINESS, WITH ASSOCIATED IRRIGATED ACREAGE, IF ANY, IN AN AMOUNT OF NOT MORE THAN ONE–HALF ACRE AND A TOTAL QUANTITY OF USE OF NOT MORE THAN THREE ACRE–FEET PER YEAR.

9. "STOCKPOND" MEANS AN ON–CHANNEL OR OFF–CHANNEL IMPOUNDMENT OF ANY SIZE THAT STORES WATER THAT IS APPROPRIABLE UNDER SECTION 45–141, SUBSECTION A AND THAT IS FOR THE SOLE PURPOSE OF WATERING LIVESTOCK AND WILDLIFE.

10. "STOCK WATERING USE" MEANS THE CONSUMPTION OF WATER BY LIVESTOCK AND WILDLIFE. EITHER:

(a) DIRECTLY FROM A NATURALLY OCCURRING BODY OF WATER, SUCH AS AN UNDEVELOPED SPRING, CIENEGA, SEEP, BOG, LAKE, DEPRESSION, SINK OR STREAM.

(b) FROM SMALL FACILITIES, OTHER THAN A STOCKPOND, THAT ARE SERVED BY A DIVERSION OF WATER THAT IS APPROPRIABLE UNDER SECTION 45–141, SUBSECTION A.

Sec. 16. Section 45–253, Arizona Revised Statutes, is amended to read:

*45–253. Service of summons: statement of claimant form: record*

A. Personal service of the summons and petition shall not be required. The court shall order that:

1. The clerk of the court issue the summons which shall specify the date by which the statement of claimant must be filed, generally describe the nature of the general adjudication and set forth such other information as may be necessary or desirable in the circumstances. The form of the summons shall be approved by the court.

2. The clerk of the court deliver the summons to the director who shall make such copies. and prepare such documents as may be necessary to effect service. The director shall assist the court in determining the scope of adjudication by recommending the portions of the river, its tributaries and any other relevant sources subject to the adjudication and in development of a statement of claimant form which shall include such duplicates as may be necessary. Upon identifying the potential claimants pursuant to section 45–256, subsection A, paragraph 1, the director shall effect service on all known potential claimants by mailing a copy of the summons by registered or certified mail, return receipt requested, to such known potential claimants.

3. When the *supreme* SUPERIOR court determines that the services of a master OR MASTERS appointed pursuant to section 45–255 are no longer necessary and enters an order terminating the appointment the clerk of the court shall reimburse the director from the fund of fees paid by the claimants pursuant to section 45–254, *subsection F,* for funds expended by the director in effecting service of process and any subsequent notices to claimants. Reimbursement shall only be from monies remaining in the fund after payment of the costs and expenses attributable to the appointment of a master OR MASTERS in accordance with section 45–255, subsection B.

B. At the time of commencement of mailing of service of process on known potential claimants, the director shall effect service on all unknown potential claimants by publication of the summons at least once a week for four consecutive weeks in a newspaper published in each of the counties within which interests in and to the use of water may be affected by the general adjudication.

C. The director shall publicize the general adjudication through the electronic media and in general circulation newspapers.

D. The court shall direct the director:

1. To return the original summons to the clerk of the court with an endorsement of the dates on which mailing and publication were completed.

2. To maintain a true and accurate record of the names and addresses of all persons who have in fact been served by registered mail, return receipt requested. Any such record, together with all supporting documents, shall constitute the records of the court which shall be subject as such to the supervision and control of the court.

Sec. 17. Section 45–254. Arizona Revised Statutes, is amended to read:

*45–254. Statement of claimant; filing; information to be included; verification: failure to file; fees*

A. Each potential claimant who is served shall present in writing the particulars of his claim on the court-approved statement of claimant form and shall file the statement of claimant form with the court within ninety days of the date of service, unless otherwise ordered by the court. The court may extend the time for good cause. A duplicate of each statement of claimant shall be made available by the clerk of the court to the director.

B. The statement of claimant form may be filed by a person on behalf of its members or users and shall constitute the required filing of its members or users.

C. The statements of claimant shall include the following information, where appropriate:

1. The name and mailing address of the potential claimant.

2. The name of the specific river, stream, tributary, wash or other source from which the right to divert or make use of water is claimed.

3. The quantities of water and the periods of time during the year for which use is claimed.

4. If distributing works are used or required, the date of beginning and completion of construction or of enlargements and the dimensions of the ditch as originally constructed and as enlarged.

5. If the use is for irrigation, the amount of land reclaimed the first year and in subsequent years, and the amount and general location of the land, the character of the soil and the kind of crops cultivated.

6. The legal description of the point or points of diversion and place of use of the waters to the nearest forty-acre tract or by other appropriate description and such map or plat showing the relative points of diversion and place of use as may be required.

7. The purpose and extent of use.

8. The time of the initiation of the right and the date when water was first used for beneficial purposes for the various amounts and times claimed in paragraph 3 of this subsection.

9. The legal basis for the claim.

D. The statement of claimant shall be verified by the claimant or the person authorized to file as provided in subsection B **OF THIS SECTION.**

*E. Any potential claimant properly served who fails to file a statement of claimant in accordance with the requirements of this article shall be barred and estopped from subsequently asserting any right theretofore acquired upon the river system and source and shall forfeit all rights to the use of water in the river system and source theretofore claimed by him. Any potential claimant who did not have actual knowledge or notice of the pendency of the proceedings may, at any time within one year of the date, as set forth in the summons, by which statements of claimant mast be filed, move to intervene in the general adjudication, if his motion to intervene contains all matters required of claimants and an affidavit that the intervenor had no actual knowledge or notice of the pendency of the proceedings. Such motion to intervene shall be granted upon such terms as are equitable, and the movant thereafter shall have the rights of a claimant in the general adjudication.*

E. AFTER THE DATE BY WHICH STATEMENTS OF CLAIMANT ARE REQUIRED TO BE FILED AS SET FORTH IN THE SUMMONS OR IN AN ORDER OF THE COURT, THE FILING OF A

STATEMENT OF CLAIMANT OR AN AMENDMENT IS PERMITTED UNDER THE FOLLOWING CIRCUMSTANCES:

1. AT ANY TIME UP TO NINETY DAYS BEFORE THE PUBLICATION OF THE DIRECTOR'S FINAL REPORT PURSUANT TO SECTION 45-256, SUBSECTION B FOR A SUBWATERSHED OR FEDERAL RESERVATION WITHIN THE RIVER SYSTEM AND SOURCE, A PERSON MAY FILE A STATEMENT OF CLAIMANT OR AN AMENDMENT TO A STATEMENT OF CLAIMANT WITH THE DIRECTOR WITHOUT LEAVE OF THE COURT.

2. AFTER THE EXPIRATION OF THE NINETY DAY PERIOD PRESCRIBED BY PARAGRAPH 1 OF THIS SUBSECTION AND BEFORE THE CONCLUSION OF HEARINGS BY THE MASTER FOR A SUBWATERSHED OR FEDERAL RESERVATION WITHIN THE RIVER SYSTEM AND SOURCE, A PERSON MAY ASSERT A CLAIM FOR A WATER USE WITHIN THE SUBWATERSHED OR FEDERAL RESERVATION WITHOUT LEAVE OF THE COURT BY FILING THE ORIGINAL OF THE STATEMENT OF CLAIMANT OR AMENDED STATEMENT OF CLAIMANT WITH THE DIRECTOR AND A NOTICE OF FILING WITH THE COURT. AFTER THE CONCLUSION OF HEARINGS ON AN EXISTING CLAIM, AN AMENDMENT TO THAT EXISTING STATEMENT OF CLAIMANT MAY ONLY BE PERMITTED AS PRESCRIBED BY PARAGRAPH 3 OF THIS SUBSECTION. IF A STATEMENT OF CLAIMANT OR AN AMENDMENT TO A STATEMENT OF CLAIMANT IS FILED AFTER THE EXPIRATION OF THE NINETY DAY PERIOD AND EXCEPT AS PROVIDED IN SECTION 45-258, OTHER PARTIES MAY OBJECT TO THE ELEMENTS OF THE CLAIM OR AMENDED CLAIM.

3. AFTER THE MASTER HAS COMPLETED HEARINGS ON A SUBWATERSHED OR FEDERAL RESERVATION WITHIN THE RIVER SYSTEM AND SOURCE AND HAS FILED A REPORT WITH THE COURT FOR THE ENTIRE SUBWATERSHED OR FEDERAL RESERVATION PURSUANT TO SECTION 45-257, A PERSON MAY NOT ASSERT A LATE CLAIM FOR A WATER RIGHT WITHIN THAT SUBWATERSHED OR RESERVATION AS A MATTER OF RIGHT. A PERSON MAY REQUEST THE COURT'S PERMISSION TO INTERVENE IN THE ADJUDICATION AND FILE A STATEMENT OF CLAIMANT WITH THE DIRECTOR. THE COURT MAY GRANT THE MOTION IF IT FINDS THAT THE INTERVENTION WOULD NOT UNDULY DELAY OR PREJUDICE THE ADJUDICATION OF THE RIGHTS OF THE ORIGINAL PARTIES. AN AMENDMENT TO AN EXISTING STATEMENT OF CLAIMANT AFTER THE FILING OF THE MASTER'S REPORT FOR THE ENTIRE SUBWATERSHED OR FEDERAL RESERVATION IS PERMITTED ONLY BY LEAVE OF THE COURT IN ITS DISCRETION AND ON MOTION OF THE PARTY SEEKING AN AMENDMENT. EXCEPT AS PROVIDED IN SECTION 45-258, OTHER PARTIES MAY OBJECT TO THE ELEMENTS OF A CLAIM OR AN AMENDED CLAIM FILED PURSUANT TO THIS PARAGRAPH.

F. ON ENTRY OF THE FINAL DECREE PURSUANT TO SECTION 45-257, ANY POTENTIAL CLAIMANT WHO IS PROPERLY SERVED AND WHO FAILED TO FILE A STATEMENT OF CLAIMANT AS PRESCRIBED BY THIS ARTICLE FOR ANY WATER RIGHT OR WHOSE MOTION FOR PERMISSIVE INTERVENTION WAS FINALLY DENIED BY THE COURT IS BARRED AND ESTOPPED FROM SUBSEQUENTLY ASSERTING ANY RIGHT THAT WAS PREVIOUSLY ACQUIRED ON THE RIVER SYSTEM AND SOURCE AND THAT WAS NOT INCLUDED IN A STATEMENT OF CLAIMANT AND FORFEITS ANY RIGHTS TO THE USE OF WATER IN THE RIVER SYSTEM AND SOURCE THAT WERE NOT INCLUDED IN A PROPERLY FILED STATEMENT OF CLAIMANT.

G. ON THE EFFECTIVE DATE OF THIS AMENDMENT TO THIS SECTION, ALL STATEMENTS OF CLAIMANT PREVIOUSLY FILED IN AN ADJUDICATION PENDING UNDER THIS ARTICLE ARE DEEMED TO BE TIMELY FILED. AN OBJECTION TO THE TIMELINESS OF ANY STATEMENT OF CLAIMANT THAT WAS FILED BEFORE THE EFFECTIVE DATE OF THIS ACT IN AN ADJUDICATION PENDING UNDER THIS ARTICLE IS NOT PERMITTED.

*F.*H. The fee for filing a statement of claimant by an individual is twenty dollars and by a corporation, municipal corporation, the state or any political subdivision, an association or partnership is two cents for every acre-foot of water claimed, or twenty dollars, whichever is greater. The director shall review the statements of claimant and the amount of fees paid as to each and report to the court or master the sufficiency of the fees paid with respect to each statement of claimant. A claim shall not be considered by the court or the master unless all fees with respect to such claim have been fully paid in accordance with the provisions of this article. Fees shall not be imposed upon any Indian tribe, community or allottee personally appearing in the general adjudication to assert claims to water.

Sec. 18. Section 45–255, Arizona Revised Statutes, is amended to read:

*45–255. Appointment of master; compensation*

*A. After the time for filing all statements of claimant has expired, the supreme court may, and in any case where there are more than one hundred potential claimants shall, appoint a master under rule 53 of the Arizona rules of civil procedure to report on all legal and factual issues. If a master is to be appointed, the supreme court may select the master from a list of persons which shall be expeditiously submitted by the director.*

A. THE SUPERIOR COURT JUDGE ASSIGNED TO THE ADJUDICATION MAY APPOINT A MASTER OR MASTERS UNDER RULE 53 OF THE ARIZONA RULES OF CIVIL PROCEDURE TO REPORT ON LEGAL AND FACTUAL ISSUES DESIGNATED UNDER A SPECIFIC ORDER OF REFERENCE.

B. *The* A master's compensation and expenses shall be fixed by the court and paid out of the fund of fees paid by the claimants pursuant to section 45–254, *subsection F.* In the event such fund of fees is insufficient, *the* A master's compensation and expenses shall be paid from *funds equitably assessed by the court in its discretion against the claimants* THE STATE GENERAL FUND AS A SEPARATE LINE ITEM APPROPRIATION FOR THE SUPERIOR COURT.

Sec. 19. § Section 45–256, Arizona Revised Statutes, is amended to read:

*45–256. Technical assistance of director: report*

A. The court or the master shall request technical assistance from the director in all aspects of the general adjudication with respect to which the director possesses hydrological or other expertise. In rendering such technical assistance, the director shall expeditiously:

1. Identify the hydrological boundaries of the river system and source and the names and addresses of all reasonably identifiable potential claimants. In identifying potential claimants, the director shall, at a minimum, identify as far as reasonably possible the current record owners of all real property within the geographical scope of the adjudication.

2. Locate, procure and make available all public and other records relevant to determination of any factual or legal issues.

3. Conduct a general investigation or examination of the river system and source.

4. Investigate or examine the facts pertaining to the claim or claims asserted by each claimant.

5. IDENTIFY THOSE WATER RIGHT CLAIMS OR USES WITHIN THE RIVER SYSTEM AND SOURCE THAT ARE DE MINIMIS USES AS PRESCRIBED BY SECTION 45–258.

5. 6. Make a map or plat on a scale not less than one inch to the mile adequate to show with substantial accuracy the course of the river system and source. the location of the ditch or canal diverting water from such river system and source, and the legal subdivisions of lands which have been irrigated or are susceptible to irrigation from the ditches and canals already constructed. UNLESS A PRIOR DECREE PROVIDES OTHERWISE, IRRIGATION WATER QUANTITIES SHALL BE ASSIGNED IN THE DIRECTOR'S REPORT BASED ON THE FOLLOWING ON–FARM WATER DUTIES:

(a) A WATER DUTY OF SIX ACRE–FEET PER ACRE PER YEAR FOR LANDS LOCATED BELOW THREE THOUSAND FEET IN ELEVATION.

(b) A WATER DUTY OF FIVE ACRE–FEET PER ACRE PER YEAR FOR LANDS LOCATED FROM THREE THOUSAND FEET THROUGH FIVE THOUSAND FEET IN ELEVATION,

(c) A WATER DUTY OF FOUR ACRE–FEET PER ACRE PER YEAR FOR LANDS LOCATED ABOVE FIVE THOUSAND FEET IN ELEVATION.

TRANSPORTATION LOSSES FROM THE POINT OF DIVERSION TO THE FIELD SHALL BE IN ADDITION TO THE ON–FARM WATER DUTY DETERMINED PURSUANT TO THIS PARAGRAPH. IRRIGATION WATER QUANTITIES THAT ARE ASSIGNED BY THE DIRECTOR AS PRESCRIBED BY THIS PARAGRAPH SHALL BE PRESUMED CORRECT BY THE MASTER AND THE COURT AND SHALL BE INCORPORATED IN THE DECREE, UNLESS REBUTTED BY A PREPONDERANCE OF THE EVIDENCE OFFERED BY A CLAIMANT WHO HAS MADE A PROPER OBJECTION UNDER SUBSECTION B OF THIS SECTION.

7. IDENTIFY WATER QUANTITIES FOR DIVERSIONS AND RESERVOIR FACILITIES. UNLESS A PRIOR DECREE PROVIDES OTHERWISE, THE RATE OF WATER DIVERSIONS SHALL BE MEASURED BY THE MAXIMUM THEORETICAL CAPACITY OF THE DIVERSION FACILITIES, AND RESERVOIR STORAGE QUANTITIES SHALL BE IDENTIFIED BASED ON THE MAXIMUM CONTROLLED CAPACITY OF THE RESERVOIR. WATER QUANTITIES FOR DIVERSIONS AND RESERVOIR FACILITIES THAT ARE ASSIGNED BY THE DIRECTOR AS PRESCRIBED BY THIS PARAGRAPH SHALL BE PRESUMED CORRECT BY THE MASTER AND THE COURT AND INCORPORATED IN THE DECREE, UNLESS REBUTTED BY A PREPONDERANCE OF THE EVIDENCE OFFERED BY A CLAIMANT WHO HAS MADE A PROPER OBJECTION UNDER SUBSECTION B OF THIS SECTION.

6. 8. Take such other steps and gather such other information as may be necessary or desirable for a proper determination of the relative rights of the parties.

B. The technical assistance rendered by the director shall be set forth in summary form on a claim by claim basis in a report prepared by the director and filed with the court or the master, which shall then be available for inspection by any claimant. THE REPORT SHALL LIST ALL INFORMATION THAT IS OBTAINED BY THE DIRECTOR AND THAT REASONABLY RELATES TO THE WATER RIGHT CLAIM OR USE INVESTIGATED. THE REPORT SHALL ALSO INCLUDE THE DIRECTOR'S PROPOSED WATER RIGHT ATTRIBUTES FOR EACH INDIVIDUAL WATER RIGHT CLAIM OR USE INVESTIGATED AS PRESCRIBED BY THIS ARTICLE. IF NO WATER RIGHT IS PROPOSED IN CONNECTION WITH AN INDIVIDUAL WATER RIGHT CLAIM OR USE, THE DIRECTOR'S RECOMMENDATIONS SHALL SO INDICATE. Any claimant may file with the court or the master written objections to the report or any part of the report within one hundred eighty days of the date on which the report was filed. *Those parts of the report with respect to which no written objections have been timely filed may be summarily*

*admitted into evidence. Those parts of the report with respect to which written objections have been timely filed shall not be admitted into evidence until such time as each claimant who has filed written objections in a timely manner shall have had a fair and reasonable opportunity to contest the validity or admissibility of those parts of the report to which his objections were directed. Each claimant who has filed written objections in a timely manner shall also have a fair and reasonable opportunity to present evidence in support of or in opposition to those parts of the report to which his objections were directed, to present evidence in support of his claim and to make objections to any other claim.*

AN OBJECTION SHALL SPECIFICALLY ADDRESS THE DIRECTOR'S RECOMMENDATIONS REGARDING THE PARTICULAR WATER RIGHT CLAIM OR USE INVESTIGATED. THE COURT OR MASTER SHALL SUMMARILY DISMISS WITH PREJUDICE OBJECTIONS THAT DO NOT COMPLY WITH THIS SUBSECTION. EACH CLAIMANT WHO HAS FILED TIMELY WRITTEN OBJECTIONS THAT COMPLY WITH THIS SUBSECTION SHALL HAVE A FAIR AND REASONABLE OPPORTUNITY TO PRESENT EVIDENCE IN SUPPORT OF OR IN OPPOSITION TO THOSE RECOMMENDATIONS OF THE DIRECTOR. ANY CLAIMANT MAY PRESENT EVIDENCE IN SUPPORT OF THE CLAIMANT'S CLAIM.

C. THOSE PORTIONS OF THE REPORT THAT DO NOT CONTAIN THE DIRECTOR'S RECOMMENDATIONS FOR THE WATER RIGHTS CLAIMS AND USES INVESTIGATED SHALL NOT BE SUMMARILY ADMITTED INTO EVIDENCE BUT MAY BE OFFERED INTO EVIDENCE FOR ANY PURPOSE RELEVANT TO THE DETERMINATION OF A WATER RIGHT CLAIM OR USE THAT IS SUBJECT TO ADJUDICATION. THE APPROPRIATOR AND ANY OTHER CLAIMANT WHO HAS FILED AN OBJECTION TO THE WATER RIGHT AS PRESCRIBED BY SUBSECTION B OF THIS SECTION SHALL HAVE A FAIR AND REASONABLE OPPORTUNITY TO PRESENT EVIDENCE IN SUPPORT OF OR IN OPPOSITION TO THOSE PORTIONS OF THE DIRECTOR'S REPORT BEFORE THE CONCLUSION OF HEARINGS ON THE WATER RIGHT. IF ADMITTED INTO EVIDENCE OVER AN OBJECTION, THOSE PORTIONS OF THE REPORT SHALL NOT BE GIVEN ANY PRESUMPTION OF CORRECTNESS.

D. INFORMATION THAT IS INCLUDED IN THE DIRECTOR'S REPORT AND THAT DESCRIBES A WATER RIGHT CLAIM OR USE OF FIVE HUNDRED ACRE–FEET OR LESS PER YEAR FOR ANY TYPE OF USE CLAIMED SHALL BE SUMMARILY ADMITTED INTO EVIDENCE. IF NO CONFLICTING EVIDENCE IS OFFERED, THE DIRECTOR'S PROPOSED ATTRIBUTES OF THE WATER RIGHT SHALL BE DEEMED CORRECT AND INCORPORATED INTO THE DECREE. IF CONFLICTING EVIDENCE IS PRESENTED, THE DIRECTOR'S PROPOSED ATTRIBUTES OF THE WATER RIGHT SHALL BE GIVEN THE WEIGHT DEEMED APPROPRIATE BY THE MASTER AND THE COURT CONSISTENT WITH THIS ARTICLE.

E. INFORMATION THAT IS INCLUDED IN THE DIRECTOR'S REPORT AND THAT DESCRIBES A WATER RIGHT CLAIM OR USE OF MORE THAN FIVE HUNDRED ACRE–FEET PER YEAR SHALL NOT BE SUMMARILY ADMITTED INTO EVIDENCE. IF OFFERED INTO EVIDENCE AND IF ADMITTED OVER OBJECTION, IT SHALL BE GIVEN NO PRESUMPTION OF CORRECTNESS.

F. CLAIMANTS WHO ARE IN AGREEMENT WITH THOSE PARTS OF THE REPORT THAT DESCRIBE THE CLAIMANTS' WATER RIGHT CLAIMS OR USES ARE NOT REQUIRED TO FILE OBJECTIONS TO THE REPORT AND MAY RELY ON THE REPORT AS EVIDENCE OF THEIR WATER RIGHT. IF THE OWNER OF A WATER RIGHT

CLAIM OR USE PROVIDES EVIDENCE IN SUPPORT OF THE REPORT, THAT EVIDENCE SHALL BE PRESENTED AFTER ALL EVIDENCE HAS BEEN INTRODUCED BY THE OBJECTORS.

G. ON REQUEST OF ANY PARTY, THE DIRECTOR SHALL PRESENT EVIDENCE CONCERNING THE FACTS STATED IN THE REPORT. NOTHING IN THIS SECTION SHALL BE CONSTRUED TO PREVENT THE COURT OR THE MASTER FROM ISSUING A PROTECTIVE ORDER ON A SHOWING OF GOOD CAUSE.

*C.* H. Prior to filing the report with the court or the master as provided in subsection B OF THIS SECTION, the director shall prepare a preliminary report. The director shall give notice to each water claimant that the preliminary report is available for inspection and comment. Upon expiration of the period provided for timely comment, the director shall revise the preliminary report as may be appropriate and shall file the report with the court or the master in accordance with subsection B OF THIS SECTION. AT LEAST ONE HUNDRED TWENTY DAYS BEFORE THE FINAL REPORT IS TO BE FILED, THE DIRECTOR SHALL FILE WITH THE COURT A NOTICE STATING THE DATE ON WHICH THE FINAL REPORT IS TO BE FILED. The director shall adopt such rules *and regulations* as may be necessary to ensure that adequate notice is given, that the preliminary report is sufficiently available for inspection by the water claimants and that provisions are made for adequate time and procedure for comment on the preliminary report.

Sec. 20. Section 45–257, Arizona Revised Statutes, is amended to read:

*45–257. Hearings; report of master; final judgment by court; administration and enforcement of decree*

A. The master shall:

1. After due notice, conduct such hearings and take such testimony as shall be necessary to determine the relative water rights of each claimant.

2. FOR ALL DETERMINATIONS, RECOMMENDATIONS, FINDINGS OF FACT OR CONCLUSIONS OF LAW ISSUED, prepare and file with the court a report in accordance with rule 53(g) of the Arizona rules of civil procedure, which shall contain THOSE DETERMINATIONS, RECOMMENDATIONS, findings of fact and conclusions of law. EACH CLAIMANT MAY FILE WRITTEN OBJECTIONS WITH THE COURT TO ANY RULE 53(g) REPORT WITHIN THE LATER OF SIXTY DAYS AFTER THE REPORT IS FILED WITH THE COURT OR WITHIN SIXTY DAYS AFTER THE EFFECTIVE DATE OF THIS AMENDMENT TO THIS SECTION. IF THE REPORT COVERS AN ENTIRE SUBWATERSHED OR FEDERAL RESERVATION, each claimant *shall have the right to* MAY file with the court written objections to the *master's* report within one hundred eighty days of the date on which the *master's* report was filed with the court.

3. Maintain under his control all records and documents at such locations as may be designated by the court.

B. The court, upon review of the *master's* report and in accordance with rule 53 of the Arizona rules of civil procedure, shall:

1. Determine the extent and priority date of and adjudicate any interest in or right to use the water of the river system and source, provided THAT when fights to the use of water or dates of appropriation have previously been determined in a *judgment or* PRIOR decree of a court, the court shall accept the determination of such rights and dates of appropriation as found in the *judgment or* PRIOR decree unless such rights have been abandoned. EXCEPT IF OTHERWISE PROVIDED IN AN APPLICABLE PRIOR FILING, CERTIFICATE OF WATER RIGHT OR PRIOR DECREE, THE DECREED CAPACITY OF A RESERVOIR INCLUDES THE RIGHT TO CONTINUOUS FILLING AND REFILLING IN PRIORITY THROUGHOUT THE YEAR.

2. Establish, in whatever form determined to be most appropriate by the court, one or more tabulations or lists of all water rights

and their relative priorities on the river system and source.

3. IDENTIFY ALL CLAIMS AND USES DETERMINED TO BE DE MINIMIS USES WITHIN THE RIVER SYSTEM AND SOURCE AS PRESCRIBED BY SECTION 45–258.

*3.* 4. Refer the final judgment or decree to the director for administration and enforcement under the continuing jurisdiction of the court.

*4.* 5. Make appropriate orders to ensure that the entire record of the general adjudication is preserved in an accessible and usable form.

*5.* 6. Record a certified copy of the final judgment or decree in each county within the geographical scope of the general adjudication which shall constitute constructive notice of the contents of the judgment or decree.

C. CLAIMANTS MAY ENTER INTO AGREEMENTS REGARDING THE ATTRIBUTES, SATISFACTION OR ENFORCEMENT OF THEIR WATER RIGHTS IN RELATION TO EACH OTHER. AN AGREEMENT SHALL BE BINDING ONLY AMONG THE PARTIES TO THAT AGREEMENT. ON REQUEST OF ALL PARTIES TO THE AGREEMENT, AN AGREEMENT SHALL BE INCORPORATED BY REFERENCE INTO THE FINAL JUDGMENT OR DECREE WITHOUT MODIFICATION. ANY MODIFICATION TO AN AGREEMENT IS VALID ONLY IF AGREED TO BY ALL PARTIES TO THE AGREEMENT AND IS BINDING ONLY AMONG THE PARTIES TO THAT AGREEMENT.

Sec. 21. Title 45, chapter 1, article 9, Arizona Revised Statutes, is amended by adding sections 45–258 and 45–261 through 45–264, to read:

*45–258. Summary adjudication of de minimis water uses*

A. A stockpond with an applicable prior filing or decree and with a claimed capacity of fifteen acre-feet or less set forth in the filing or decree shall be deemed a de minimis use of the river system or source, and its water right attributes are not subject to objection other than by the claimant of that stockpond use as prescribed in section 45–256, subsection B or section 45–257, subsection a, paragraph 2. Unless the claimant of the stockpond right files an objection requesting an adjudication of the right in the ordinary course of the proceedings, the water right attributes of a stockpond that complies with this subsection shall be summarily adjudicated and incorporated into the final decree as follows:

1. For each stockpond subject to summary adjudication, the decree shall describe the water right ownership, capacity in acre-feet, priority date, place of use or point of diversion, source of water and those other attributes deemed necessary by the court.

2. The decreed attributes of each summarily adjudicated stockpond shall be separately determined pursuant to section 45–261, subsections a, c and D. A summarily adjudicated stockpond shall not be decreed to have an unsilted capacity greater than that existing on the effective date of this section and shall not he decreed to have a capacity of more than fifteen acre-feet. The decreed capacity of a summarily adjudicated stockpond includes the right to continuous filling and refilling throughout the year and the right to remove silt.

B. A domestic use with an applicable prior filing or decree and with a claimed annual quantity of use of three acre-feet or less for each residential connection set forth in the filing or decree shall be deemed a de minimis use of the river system and source and its water right attributes are not subject to objection · other than by the claimant of that use as prescribed in section 45–256, subsection B or section 45–257, subsection A, paragraph 2, unless the claimant of the domestic use files an objection requesting an adjudication of the right in the ordinary course of the proceedings, the water right attributes of a domestic use that complies with this subsection shall be summarily adjudicated and incorporated in the final decree as follows:

1. For each domestic use subject to summary adjudication, the decree shall describe the water right ownership, quantity, annual volume or rate of diversion, priority date, place of use, point of diversion and source of water and those other attributes deemed necessary by the court.

2. For each domestic use subject to summary adjudication with no quantity of use determined in a prior decree, an annual quantity of three acre-feet or less per residential connection is presumed correct and shall be reported in the decree. If a prior decree provides a quantity of use, that quantity shall be accepted by the court and reported in the decree, except that a summarily adjudicated domestic use shall not be decreed to have an annual quantity of more than three acre-feet per residential connection.

C. a small business use with an applicable prior filing or decree shall be deemed a de minimis use of the river system and source and its water right attributes are not subject to objection other than by the claimant of that small business use as prescribed in section 45–256, subsection B or section 45–257, subsection A, paragraph 2. Unless the claimant of the small business use files an objection requesting an adjudication of the right in the ordinary course of the proceedings, the water right attributes of a small business use that compiles with this subsection shall be summarily adjudicated and incorporated into the final decree as follows:

1. For each small business use subject to summary adjudication, the decree shall describe the water right ownership, quantity of use in annual volume or rate of diversion, priority date, place of use or point of diversion and source of water and those other attributes deemed necessary by the court.

2. For each small business use subject to summary adjudication with no quantity of use determined in a prior decree, an annual quantity of three acre-feet or less will be presumed correct and shall be reported in the decree. If a prior decree provides a quantity of use, that quantity shall he accepted by the court and reported in the decree, except that a summarily adjudicated small business use shall not be decreed to have an annual quantity of use of more than three acre-feet.

D. a stock watering use with an applicable prior filing or decree shall be deemed a de minimis use of the river system and source, and its water right attributes are not subject to objection other than by the claimant of that stock watering use as prescribed in section 45–256, subsection B or section 45–257, subsection A, paragraph 2. Unless the claimant of the stock watering use files an objection requesting an adjudication of the right in the ordinary course of the proceedings, the water right attributes of a stock watering use that complies with this subsection shall be summarily adjudicated and incorporated into the final decree as follows:

1. For each stock watering use subject to summary adjudication, the decree shall describe the water right ownership, quantity of use in acre-feet, priority date, place of use or point of diversion and source of water and those other attributes deemed necessary by the court. A summarily adjudicated right for stock watering use does not include the right to require a minimum rate of flow on the reach of the stream where the right is located, and summarily adjudicated stock watering rights are not subject to enforcement actions to satisfy other water rights adjudicated by the court.

2. For each stock watering use subject to summary adjudication with no quantity of use determined in A PRIOR DECREE, AN ANNUAL QUANTITY OF REASONABLE USE OF NOT MORE THAN ONE ACRE-FOOT SHALL BE PRESUMED CORRECT AND REPORTED IN THE DECREE. IF A PRIOR DECREE PROVIDES A QUANTITY OF USE, THAT QUANTITY SHALL BE ACCEPTED BY THE COURT AND REPORTED IN THE DECREE, EXCEPT THAT A SUMMARILY ADJUDICATED STOCK WATERING USE SHALL NOT BE DECREED TO

HAVE AN ANNUAL QUANTITY OF USE OF MORE THAN ONE ACRE–FOOT.

E. EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION, SECTION 45–261, SUBSECTIONS A, C AND D APPLY TO THE SUMMARY ADJUDICATION OF WATER RIGHT ATTRIBUTES FOR DE MINIMIS USES.

F. IN ANY POST–DECREE SEVERANCE AND TRANSFER OR CHANGE OF USE PROCEEDING INVOLVING ANY DE MINIMIS USE SUMMARILY ADJUDICATED PURSUANT TO THIS SECTION OR IN A POST–DECREE ENFORCEMENT ACTION INVOLVING A STOCKPOND, A DOMESTIC USE OR A SMALL BUSINESS USE SUMMARILY ADJUDICATED PURSUANT TO THIS SECTION, THE PARTIES MAY INTRODUCE EVIDENCE TO REBUT THE WATER RIGHT ATTRIBUTES DECREED TO THE DE MINIMIS USE. THIS SUBSECTION DOES NOT APPLY TO ANY ATTRIBUTES OF A DE MINIMIS USE THAT WERE DETERMINED IN A PRIOR DECREE AND ACCEPTED BY THE COURT PURSUANT TO SECTION 45–257, SUBSECTION B, PARAGRAPH 1. A PERSON WHO CLAIMS THAT ONE OR MORE DE MINIMIS USES INTERFERE WITH THAT PERSON'S WATER RIGHT HAS THE BURDEN OF PROVING THAT THE WATER DIVERTED OR WITHDRAWN BY THE DE MINIMIS USE WOULD OTHERWISE BE AVAILABLE TO SATISFY THE PERSON'S WATER RIGHT.

*45–261. Presumption in favor of prior filings and decrees*

A. EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS ARTICLE AND TO THE EXTENT THAT WATER RIGHTS HAVE NOT BEEN FORFEITED OR ABANDONED, THE DIRECTOR, THE MASTER AND THE COURT SHALL APPLY THE FOLLOWING EVIDENTIARY RULES IN DETERMINING THE ATTRIBUTES OF WATER RIGHTS CLAIMED PURSUANT TO THIS ARTICLE:

1. THE COURT SHALL ACCEPT INFORMATION IN AN APPLICABLE PRIOR DECREE AS PRESCRIBED BY SECTION 45–257, SUBSECTION B, PARAGRAPH 1.

2. INFORMATION IN AN APPLICABLE PRIOR FILING SHALL BE PRESUMED CORRECT UNLESS REPORTED BY THE DIRECTOR TO BE CLEARLY ERRONEOUS.

3. IF INFORMATION IN A PRIOR DECREE CONFLICTS WITH INFORMATION IN ONE OR MORE APPLICABLE PRIOR FILINGS, THE COURT SHALL ACCEPT THE INFORMATION IN THE PRIOR DECREE AS PRESCRIBED BY SECTION 45–257, SUBSECTION B, PARAGRAPH 1.

4. IF INFORMATION IN APPLICABLE PRIOR FILINGS CONFLICTS, THE INFORMATION MOST FAVORABLE TO THE CLAIMANT SHALL BE PRESUMED CORRECT UNLESS REPORTED BY THE DIRECTOR TO BE CLEARLY ERRONEOUS.

5. IF THERE IS NO INFORMATION IN ANY APPLICABLE PRIOR FILING OR DECREE OR IF THE COURT FINDS THAT INFORMATION CONTAINED IN AN APPLICABLE PRIOR FILING REGARDING A WATER RIGHT ATTRIBUTE IS CLEARLY ERRONEOUS, THE COURT SHALL DETERMINE THE ATTRIBUTE. IN MAKING A DETERMINATION PURSUANT TO THIS SUBSECTION, THE COURT MAY USE THE DIRECTOR'S REPORT, STATEMENT OF CLAIMANT INFORMATION, INFORMATION OBTAINED IN CLAIMANT INTERVIEWS, AERIAL PHOTOGRAPHS, SATELLITE TECHNOLOGY, HISTORICAL RECORDS, MAPS, TECHNICAL DATA OR OTHER RELEVANT INFORMATION IN EVIDENCE.

B. EXCEPT AS PROVIDED IN SECTION 45–258, THE PRESUMPTION IN FAVOR OF INFORMATION CONTAINED IN AN APPLICABLE PRIOR FILING MAY BE REBUTTED BY ANY PARTY WHO HAS FILED A PROPER

OBJECTION PURSUANT TO SECTION 45–256, SUBSECTION B AND ON A SHOWING OF CLEAR AND CONVINCING EVIDENCE.

C. IF THERE IS A CONFLICT IN APPLICABLE PRIOR FILINGS REGARDING THE OWNERSHIP OF A WATER RIGHT AND MULTIPLE PARTIES HAVE FILED APPLICABLE STATEMENTS OF CLAIMANT, THE PRESUMPTION IN FAVOR OF INFORMATION IN APPLICABLE PRIOR FILINGS DOES NOT APPLY TO THE DETERMINATION OF OWNERSHIP. ANY CLAIMANT MAY OFFER THAT INFORMATION TO SUPPORT OR REFUTE A CLAIM OF WATER RIGHT OWNERSHIP. ALL OTHER ATTRIBUTES OF THE WATER RIGHT SHALL BE DETERMINED PURSUANT TO THE PRESUMPTIONS IN THIS SECTION.

D. SECTION 45–256, SUBSECTIONS D AND E APPLY TO THE EVIDENTIARY WEIGHT GIVEN TO THE FOLLOWING DETERMINATIONS MADE BY THE DIRECTOR:

1. THAT INFORMATION CONTAINED IN A PRIOR FILING IS CLEARLY ERRONEOUS AS IT RELATES TO THE WATER RIGHT CLAIM OR USE BEING INVESTIGATED.

2. THAT NO WATER RIGHT WAS INITIATED OR PERFECTED UNDER THE APPLICABLE FEDERAL, STATE OR TERRITORIAL LAW.

3. THAT A WATER RIGHT WAS FORFEITED OR ABANDONED.

E. THE DIRECTOR'S REPORT SHALL CONTAIN THE BASIS FOR DETERMINATIONS MADE PURSUANT TO SUBSECTION D OF THIS SECTION.

*45–262. Settlement of Indian claims, effect*

CONTRIBUTIONS OF SURFACE WATER BY AN APPROPRIATOR TO AN INDIAN WATER RIGHTS SETTLEMENT SHALL NOT DIMINISH THE APPROPRIATOR'S DECREED WATER RIGHT PURSUANT TO SECTION 45–257 UNLESS A SEVERANCE AND TRANSFER OF THAT RIGHT ARE SPECIFICALLY PROVIDED FOR IN THE SETTLEMENT AGREEMENT, BUT THE APPROPRIATOR SHALL NOT USE WATER AVAILABLE UNDER ITS DECREED RIGHT IF THE WATER IS ACTUALLY BEING USED BY AN INDIAN TRIBE PURSUANT TO THE SETTLEMENT AGREEMENT. THE DECREE ENTERED FOR THE APPROPRIATOR SHALL INCLUDE ANY CONTRIBUTIONS THAT ARE MADE AND THAT ARE DESIGNATED AS FOR THE BENEFIT OF THE TRIBE, SUBJECT TO THE PROVISIONS OF THE SETTLEMENT AGREEMENT.

*45–263. State law applicable; public trust inapplicable*

A. STATE LAW, INCLUDING ALL DEFENSES AVAILABLE UNDER STATE LAW, APPLIES TO THE ADJUDICATION OF ALL WATER RIGHTS INITIATED OR PERFECTED PURSUANT TO STATE LAW.

B. THE PUBLIC TRUST IS NOT AN ELEMENT OF A WATER RIGHT IN AN ADJUDICATION PROCEEDING HELD PURSUANT TO THIS ARTICLE. IN ADJUDICATING THE ATTRIBUTES OF WATER RIGHTS PURSUANT TO THIS ARTICLE, THE COURT SHALL NOT MAKE A DETERMINATION AS TO WHETHER PUBLIC TRUST VALUES ARE ASSOCIATED WITH ANY OR ALL OF THE RIVER SYSTEM OR SOURCE.

*45–264. Joint legislative adjudication monitoring committee*

A. A JOINT LEGISLATIVE COMMITTEE SHALL BE APPOINTED TO MONITOR THE PROGRESS OF GENERAL ADJUDICATIONS AND THE STATUS OF THEIR FUNDING. THE COMMITTEE SHALL CONSIST OF FIVE MEMBERS OF THE SENATE APPOINTED BY THE PRESIDENT OF THE SENATE, NOT MORE THAN THREE OF WHOM SHALL BE MEMBERS OF THE SAME POLITICAL PARTY AND OF FIVE MEMBERS OF THE HOUSE OF REPRESENTATIVES APPOINTED BY THE SPEAKER OF THE HOUSE OF REPRE-

SENTATIVES, NOT MORE THAN THREE OF WHOM SHALL BE MEMBERS OF THE SAME POLITICAL PARTY.

B. THE COMMITTEE SHALL MEET AT LEAST ANNUALLY AND SHALL CONDUCT HEARINGS AND REQUEST INFORMATION FROM THE DIRECTOR OF THE DEPARTMENT OF WATER RESOURCES AS IT DEEMS NECESSARY TO BE APPRISED OF THE STATUS OF THE ADJUDICATIONS. THE COMMITTEE SHALL REPORT TO THE PRESIDENT OF THE SENATE AND THE SPEAKER OF THE HOUSE OF REPRESENTATIVES AT LEAST ANNUALLY ON ITS FINDINGS, AND INCLUDE IN THAT REPORT ANY RECOMMENDATIONS FOR LEGISLATIVE ACTION IT CONSIDERS NECESSARY TO THE EFFICIENT, PROMPT AND JUST CONCLUSION OF THE ADJUDICATIONS.

Sec. 22. Section 45–272, Arizona Revised Statutes, is amended to read:

*45–272. Water rights in stockponds; priority*

A. The owner of any stockpond constructed after June 12, 1919 and prior to August 27, 1977, the capacity of which is not in excess of fifteen acre-feet and concerning which water rights litigation or protest to the state land department was not a matter of record prior to August 27, 1977, shall have a valid water right in such stockpond with priority as of the date of construction and shall be eligible for such evidence of validity as the director may prescribe.

B. All water rights issued pursuant to a permit or certificate issued prior to August 27, 1977 by the state land department or its predecessors or pursuant to an application to appropriate filed with the state land department or its predecessors prior to August 27, 1977, rights to the use of the mainstream waters of the Colorado river, rights previously acquired or validated by contract with the United States, court decree or other adjudication or rights acquired prior to June 12, 1919 and registered pursuant to article 7 of this chapter shall have priority over any water right claimed pursuant to this article.

C. Any person **WHO IS** claiming a water right pursuant to this article **AND** who fails to file a claim of water right prior to *June 30, 1979* ONE YEAR AFTER THE EFFECTIVE DATE OF THIS AMENDMENT TO THIS SECTION shall have a water right priority as of the date of filing. AN EXISTING CLAIM OF WATER RIGHT UNDER THIS ARTICLE MAY BE AMENDED AT ANY TIME BEFORE THE COMPLETION OF HEARINGS ON THE CLAIMED RIGHT PURSUANT TO SECTION 45–257, SUBSECTION A.

D. Subsequent to August 27, 1977, no person may construct or cause to be constructed a stockpond of any size unless the director of water resources or his predecessors *has* HAVE approved an application for A permit to appropriate such water filed pursuant to section 45–152.

Sec. 23. *Severability*

If a provision of this act or its application to any person or circumstance is held invalid for any reason, the invalidity does not affect other provisions or applications of this act that can be given effect without the invalid provision or application, and to this end the provisions of this act are severable.

Sec. 24. *Applicability*

Unless otherwise specifically provided, this act applies to:

1. All rights to appropriable water initiated or perfected on or before the effective date of this act and any rights subsequently initiated or perfected.

2. All general stream adjudications pending on the effective date of this act and all future general stream adjudications initiated pursuant to title 45, chapter 1, article 9, Arizona Revised Statutes.

Sec. 25. *Declaration of policy and intent*

A. The legislature finds and declares that the interests of the citizens of this state will be best served if the statutorily created process for the adjudication of surface water rights is amended to simplify and expedite pending litigation. The legislature also finds that ambiguities exist in the current statutes

relating to surface water rights and that the clarification of these statutes will assist all parties by reducing the need for the courts to resolve current ambiguities. The legislature recognizes that the general stream adjudications are complicated and have the potential to profoundly affect the property rights of the water users of this state. It is the intention of this act to clarify existing laws and adopt changes that are equitable and fair to all parties, that comply with the letter and the spirit of the McCarran Amendment (43 United States Code section 666), that provide long-term security to all water rights holders within this state and that streamline the adjudication process and remove undue burdens of litigation from the parties.

B. In enacting section 45–263, subsection B, Arizona Revised Statutes, as added by this act, the legislature declares that it does not intend to create an implication that the public trust doctrine applies to water rights in this state. Any subsequent determination of public trust values associated with or affecting water rights in this state shall not be made in or as a part of a general stream adjudication initiated pursuant to title 45, chapter 1, article 9, Arizona Revised Statutes, as amended by this act, but shall only be made after a determination of navigability of the underlying watercourse in proceedings conducted pursuant to title 37, chapter 7, Arizona Revised Statutes.

C. The legislature further finds that a primary purpose of the general stream adjudication is to quantify and prioritize claims made by the United States Government and Indian tribes to waters from the river systems and sources in this state. It is the express intent of the legislature that the department of water resources proceed to prepare and present the director's reports on Indian and non-Indian reservations to the general stream adjudication courts as expeditiously as possible. The legislature further finds that an early focus by the general stream adjudication courts on the trial of Indian and non-Indian federal water claims will increase the probability of earlier settlement negotiations with the United States and the Indian tribes, thereby increasing the pos-

sibility of an earlier resolution of these difficult issues. The legislature further finds that an early quantification and prioritization of Indian and non-Indian federal claims are prudent objectives in order to plan for the impacts that the federal water rights may have on the welfare of this state.

D. In enacting this act, the legislature intends that in an adjudication instituted pursuant to the general adjudication statutes, the evidentiary weight to be given to a permit to appropriate under section 45–158, Arizona Revised Statutes, as amended by this act, a certificate of water right under section 45–162, Arizona Revised Statutes, as amended by this act, and a reservoir permit issued under section 45–161, Arizona Revised Statutes, as amended by this act, shall be determined by the court in accordance with existing law.

E. To carry out the purposes of this act, the legislature is establishing a permanent oversight committee for the general stream adjudications of this state, which shall convene from time to time to review the progress of the various cases and to determine whether additional legislative changes are necessary to expedite the fair adjudication of water right claims and uses in this state.

Sec. 26. *Emergency*

This act is an emergency measure that is necessary to preserve the public peace, health or safety and is operative immediately as provided by law.

## APPENDIX B

### Chapter 230—421R—S Ver of HB2193

**Reference Title: water exchanges; technical correction**

**AN ACT**

**AMENDING TITLE 37, CHAPTER 2, ARTICLE 5, ARIZONA REVISED STATUTES, BY ADDING SECTION 37-321.01; AMENDING SECTIONS 45–151, 45–153 AND 45–164, ARIZONA REVISED STATUTES; AMENDING SECTION 45–257. ARIZONA REVISED STATUTES, AS AMENDED BY LAWS 1995, CHAPTER 9, SECTION 20; RELATING TO WATERS.**

Be it enacted by the Legislature of the State of Arizona:

Section 1. Title 37, chapter 2, article 5, Arizona Revised Statutes, is amended by adding section 37–321.01, to read:

*37–321.01. Rights to water used on state land*

A. A PERMIT OR CERTIFICATE FOR THE RIGHT TO USE WATER ON STATE LAND FOR STOCKWATERING OR STOCKPOND PURPOSES, OR FOR DOMESTIC USE ON A RANCH OR FARM SHALL BE ISSUED IN THE NAME OF THE STATE OF ARIZONA, EXCEPT AS FOLLOWS:

1. IF THE PLACE OF USE IS LOCATED ON STATE LAND, BUT THE POINT OF DIVERSION IS LOCATED ON PATENTED LAND, THE CERTIFICATE OR PERMIT SHALL BE ISSUED TO THE OWNER OF THE PATENTED LAND.

2. IF THE PLACE OF USE IS LOCATED ON STATE LAND, BUT THE POINT OF DIVERSION IS LOCATED ON LAND OWNED BY THE UNITED STATES, THE PERMIT OR CERTIFICATE SHALL BE ISSUED TO THE LESSEE OF THE STATE LAND.

3. IF THE WATER RIGHT WAS PERFECTED UNDER THE LAW APPLICABLE AT THE TIME THAT THE RIGHT WAS INITIATED BY THE LESSEE OR ITS PREDECESSORS IN INTEREST FOR USE ON LAND THAT WAS OWNED BY THE UNITED STATES BEFORE THAT LAND WAS DESIGNATED FOR TRANSFER TO THE STATE OF ARIZONA, THE CERTIFICATE OR PERMIT SHALL BE ISSUED TO THE LESSEE OF THE STATE LAND.

B. THE COMMISSIONER AND THE PERSON OR PERSONS ASSERTING THAT A PERMIT OR CERTIFICATE SHOULD BE ISSUED AS PRESCRIBED BY THIS SECTION MAY STIPULATE AS TO THE OWNERSHIP OF A WATER RIGHT. THE STIPULATION OR AGREEMENT SHALL BE ACCEPTED BY THE DEPARTMENT OF WATER RESOURCES.

C. AN APPLICATION FOR A CERTIFICATE TO APPROPRIATE WATER FOR USE ON STATE LAND AS PROVIDED IN SUBSECTION A OF THIS SECTION SHALL NOT BE APPROVED, NOR SHALL A PERMIT OR CERTIFICATE BE ISSUED PURSUANT TO THIS SECTION BY THE DIRECTOR OF THE DEPARTMENT OF WATER RESOURCES UNTIL THE COMMISSIONER HAS BEEN GIVEN THE OPPORTUNITY TO REVIEW AND OBJECT TO THE PERMIT OR CERTIFICATE. SECTION 45–164, SUBSECTION C APPLIES TO ANY OBJECTIONS MADE PURSUANT TO THIS SUBSECTION.

D. NO PERSON SHALL HAVE ANY LEGAL INTEREST IN OR THE RIGHT TO LEASE STATE LAND BASED SOLELY UPON OWNERSHIP OF A WATER RIGHT ACQUIRED OR CONFIRMED UNDER THIS SECTION OR SECTION 45–257, SUBSECTION D.

E. NO WATER RIGHT FOR STOCKWATERING OR STOCKPOND PURPOSES, OR FOR DOMESTIC USES ON A RANCH OR FARM THAT IS ACQUIRED BY A LESSEE PURSUANT TO SUBSECTION A, PARAGRAPH 3, OF THIS SECTION MAY BE SEVERED FROM ITS PLACE OF USE ON STATE LAND AND TRANSFERRED FOR USE ON OTHER LAND WITHOUT PRIOR WRITTEN CONSENT OF THE COMMISSIONER. THE COMMISSIONER MAY WITHHOLD CONSENT IF THE COMMISSIONER FINDS THAT THE USE OF STATE LAND FOR GRAZING PURPOSES IS DEPENDENT UPON THE WATER RIGHT THAT IS PROPOSED TO BE TRANSFERRED. A LESSEE'S SUCCESSOR IN INTEREST OR THE STATE SHALL PAY COMPENSATION TO A LESSEE OF STATE LAND WHO IS ENTITLED TO A DOMESTIC, STOCKWATERING OR STOCKPOND WATER RIGHT PURSUANT TO SUBSECTION A, PARAGRAPH 3, OF THIS SECTION IF THE LESSEE IS DENIED REASONABLE USE OF THE WATER RIGHT BECAUSE OF A REFUSAL BY

THE COMMISSIONER TO CONSENT TO THE SEVERANCE AND TRANSFER OF THE RIGHT FROM ITS PLACE OF USE ON STATE LAND. COMPENSATION SHALL BE DETERMINED BY APPRAISAL AND MAY BE REVIEWED BY THE STATE BOARD OF APPEALS BY THE PROCEDURE FOR APPRAISING

Chapter 230—421R—S Ver of HB2193

Reference Title: water exchanges; technical correction

AN ACT

AMENDING TITLE 37, CHAPTER 2, ARTICLE 5, ARIZONA REVISED STATUTES, BY ADDING SECTION 37-321.01; AMENDING SECTIONS 45-151, 45-153 AND 45-164, ARIZONA REVISED STATUTES; AMENDING SECTION 45-257, ARIZONA REVISED STATUTES, AS AMENDED BY LAWS 1995, CHAPTER 9, SECTION 20; RELATING TO WATERS.

Be it enacted by the Legislature of the State of Arizona:

Section 1. Title 37, chapter 2, article 5, Arizona Revised Statutes, is amended by adding section 37-321.01, to read:

*37-321.01. Rights to water used on state land*

A. A PERMIT OR CERTIFICATE FOR THE RIGHT TO USE WATER ON STATE LAND FOR STOCKWATERING OR STOCKPOND PURPOSES, OR FOR DOMESTIC USE ON A RANCH OR FARM SHALL BE ISSUED IN THE NAME OF THE STATE OF ARIZONA, EXCEPT AS FOLLOWS:

1. IF THE PLACE OF USE IS LOCATED ON STATE LAND, BUT THE POINT OF DIVERSION IS LOCATED ON PATENTED LAND, THE CERTIFICATE OR PERMIT SHALL BE ISSUED TO THE OWNER OF THE PATENTED LAND.

2. IF THE PLACE OF USE IS LOCATED ON STATE LAND, BUT THE POINT OF DIVERSION IS LOCATED ON LAND OWNED BY THE UNITED STATES, THE PERMIT OR CERTIFICATE SHALL BE ISSUED TO THE LESSEE OF THE STATE LAND.

3. IF THE WATER RIGHT WAS PERFECTED UNDER THE LAW APPLICABLE AT THE TIME THAT THE RIGHT WAS INITIATED BY THE LESSEE OR ITS PREDECESSORS IN INTEREST FOR USE ON LAND THAT WAS OWNED BY THE UNITED STATES BEFORE THAT LAND WAS DESIGNATED FOR TRANSFER TO THE STATE OF ARIZONA, THE CERTIFICATE OR PERMIT SHALL BE ISSUED TO THE LESSEE OF THE STATE LAND.

B. THE COMMISSIONER AND THE PERSON OR PERSONS ASSERTING THAT A PERMIT OR CERTIFICATE SHOULD BE ISSUED AS PRESCRIBED BY THIS SECTION MAY STIPULATE AS TO THE OWNERSHIP OF A WATER RIGHT. THE STIPULATION OR AGREEMENT SHALL BE ACCEPTED BY THE DEPARTMENT OF WATER RESOURCES.

C. AN APPLICATION FOR A CERTIFICATE TO APPROPRIATE WATER FOR USE ON STATE LAND AS PROVIDED IN SUBSECTION A OF THIS SECTION SHALL NOT BE APPROVED, NOR SHALL A PERMIT OR CERTIFICATE BE ISSUED PURSUANT TO THIS SECTION BY THE DIRECTOR OF THE DEPARTMENT OF WATER RESOURCES UNTIL THE COMMISSIONER HAS BEEN GIVEN THE OPPORTUNITY TO REVIEW AND OBJECT TO THE PERMIT OR CERTIFICATE. SECTION 45-164, SUBSECTION C APPLIES TO ANY OBJECTIONS MADE PURSUANT TO THIS SUBSECTION.

D. NO PERSON SHALL HAVE ANY LEGAL INTEREST IN OR THE RIGHT TO LEASE STATE LAND BASED SOLELY UPON OWNERSHIP OF A WATER RIGHT ACQUIRED OR CONFIRMED UNDER THIS SECTION OR SECTION 45-257, SUBSECTION D.

E. NO WATER RIGHT FOR STOCKWATERING OR STOCKPOND PURPOSES, OR FOR DOMESTIC USES ON A RANCH OR FARM THAT IS ACQUIRED BY A

LESSEE PURSUANT TO SUBSECTION A, PARAGRAPH 3, OF THIS SECTION MAY BE SEVERED FROM ITS PLACE OF USE ON STATE LAND AND TRANSFERRED FOR USE ON OTHER LAND WITHOUT PRIOR WRITTEN CONSENT OF THE COMMISSIONER. THE COMMISSIONER MAY WITHHOLD CONSENT IF THE COMMISSIONER FINDS THAT THE USE OF STATE LAND FOR GRAZING PURPOSES IS DEPENDENT UPON THE WATER RIGHT THAT IS PROPOSED TO BE TRANSFERRED. A LESSEE'S SUCCESSOR IN INTEREST OR THE STATE SHALL PAY COMPENSATION TO A LESSEE OF STATE LAND WHO IS ENTITLED TO A DOMESTIC, STOCKWATERING OR STOCKPOND WATER RIGHT PURSUANT TO SUBSECTION A, PARAGRAPH 3, OF THIS SECTION IF THE LESSEE IS DENIED REASONABLE USE OF THE WATER RIGHT BECAUSE OF A REFUSAL BY THE COMMISSIONER TO CONSENT TO THE SEVERANCE AND TRANSFER OF THE RIGHT FROM ITS PLACE OF USE ON STATE LAND. COMPENSATION SHALL BE DETERMINED BY APPRAISAL AND MAY BE REVIEWED BY THE STATE BOARD OF APPEALS BY THE PROCEDURE FOR APPRAISING IMPROVEMENTS ON STATE LAND, ON PAYMENT OF THE COMPENSATION, THE DEPARTMENT OF WATER RESOURCES SHALL REISSUE THE WATER RIGHT IN THE NAME OF THE PERSON OR ENTITY MAKING THE PAYMENT.

F. FOR PURPOSES OF THIS SECTION, "CERTIFICATE" INCLUDES CERTIFICATES ISSUED PURSUANT TO TITLE 45, CHAPTER 1, ARTICLE 5 OR ARTICLE 10.

Sec. 2. Section 45–151, Arizona Revised Statutes, is amended to read:

*45–151. Right of appropriation; permitted uses; water rights in stockponds*

A. Any person *or,* the state of Arizona or a political subdivision thereof may appropriate unappropriated water for domestic, munici-pal, irrigation, stock watering, water power, recreation, wildlife, including fish, nonrecoverable water storage pursuant to section 45–833.01 or mining uses, for his personal use or for delivery to consumers. The person *or,* the state of Arizona or a political subdivision thereof first appropriating the water shall have the better right.

B. To effect the beneficial use, the person *or,* the state of Arizona or a political subdivision thereof appropriating the water may construct and maintain reservoirs, storage facilities pursuant to chapter 3.1 of this title, dams, canals, ditches, flumes and other necessary waterways.

C. A water right in a stockpond, certified pursuant to article 10 of this chapter, shall be recognized as if such water had been appropriated pursuant to this article.

D. THE VALIDITY OF AND THE RIGHT TO EXERCISE A WATER RIGHT OBTAINED IN ACCORDANCE WITH STATE LAW SHALL NOT BE DIMINISHED, IMPAIRED OR OTHERWISE AFFECTED BECAUSE OTHER WATER IS OR MAY BE AVAILABLE TO THE APPROPRIATOR FROM AN ALTERNATIVE RIGHT OR SOURCE TO SATISFY THE SAME USE.

E. THE RIGHT TO WATER APPROPRIATED ON LANDS OWNED BY THE UNITED STATES SHALL BE HELD BY THE PERSON WHO FIRST EFFECTS THE BENEFICIAL USE OF THE WATER APPROPRIATED AND BY THE PERSON'S SUCCESSOR. THIS SUBSECTION SHALL NOT BE CONSTRUED TO PRECLUDE THE UNITED STATES FROM BEING THE HOLDER OF A RIGHT IF THE UNITED STATES FIRST EFFECTS THE BENEFICIAL USE.

F. A WATER SOURCE THAT IS LOCATED ON LAND OWNED BY THE UNITED STATES AND THAT HAS BEEN OR MAY BE APPROPRIATED UNDER STATE LAW MAY BE BENEFICIALLY USED ON ANY LAND WHETHER OR NOT OWNED BY THE UNITED STATES.

Sec. 3. Section 45–153, Arizona Revised Statutes, is amended to read:

*45-153. Criteria for approval or rejection of applications: restrictions on approval, municipal use*

A. The director shall approve applications made in proper form for the appropriation of water for a beneficial use, but when the application or the proposed use conflicts with vested rights, is a menace to public safety, or is against the interests and welfare of the public. the application shall be rejected.

B. An application may be approved for less water than applied for if substantial reasons exist but shall not be approved for more water than may be put to a beneficial use. Applications for municipal uses may be approved to the exclusion of all subsequent appropriations if the estimated needs of the municipality so demand after consideration by and upon order of the director.

C. IF THE DIRECTOR APPROVES AN APPLICATION FOR THE APPROPRIATION OF WATER FOR USE ON LAND OWNED BY THE STATE OF ARIZONA, A PERMIT OR CERTIFICATE SHALL BE ISSUED AS PRESCRIBED BY SECTION 37–321.01. IF THE DIRECTOR APPROVES AN APPLICATION FOR THE APPROPRIATION OF WATER FOR USE ON LAND OWNED BY THE UNITED STATES, A PERMIT OR CERTIFICATE SHALL BE ISSUED AS PRESCRIBED BY SECTION 45–151, SUBSECTION E.

Sec. 4. Section 45–164, Arizona Revised Statutes. is amended to read:

*45-164. Registry: reporting*

A. The director shall establish and maintain a registry of applications, permits and certificates of water right filed or issued pursuant to this chapter and statements of claim filed pursuant to article 7 of this chapter.

B. A person who has filed an application or a statement of claim or a person to whom the director has issued a permit or a certificate of water right shall notify the director of a change in name or mailing address or an assignment pursuant to section 45–163. A person to whom an application, permit, certificate of water right or statement of claim is assigned shall notify the director of the assignment and shall furnish information as required by the director to keep the registry current and accurate. The director shall have continuing jurisdiction and shall issue revised permits and certificates as necessary.

C. If an appropriator of water filed an application for a permit to appropriate water pursuant to article 5 of this chapter or an application for certification under article 10 of this chapter but the permit or certificate was issued or subsequently reissued the United States or the state of Arizona, an appropriator of water may file a written application with the department to request that a permit or certificate be reissued in accordance with either section 37–321.01, subsection A or section 45–151, subsection E. Within thirty days after receiving the application, the department shall provide notice of the application to the state or federal agency that owns the land on which the water is used and, if applicable, to the owner of patented land fro OM WHICH THE WATER IS DIVERTED OR ON WHICH THE WATER IS STORED. A PERSON WHO IS ENTITLED TO THIS NOTICE FROM THE DEPARTMENT MAY FILE WRITTEN OBJECTIONS TO THE APPLICATION WITHIN FORTY–FIVE DAYS AFTER THE DEPARTMENT MAILS THE NOTICE. IF NO TIMELY OBJECTION IS RECEIVED BY THE DEPARTMENT, IT SHALL APPROVE OR DENY THE APPLICATION WITHIN NINETY DAYS FROM THE DATE OF FILING OF THE APPLICATION. IF AN OBJECTION IS RECEIVED, AND ON WRITTEN REQUEST OF EITHER THE APPLICANT OR THE OBJECTOR, THE DIRECTOR SHALL HOLD A HEARING ON THE APPLICATION AND OBJECTIONS. IF A REQUEST FOR A HEARING IS NOT RECEIVED, THE DIRECTOR SHALL GRANT OR DENY THE RELIEF SOUGHT IN THE APPLICATION BASED UPON THE APPLICATION AND OBJECTIONS FILED. A FINAL DECISION OF THE DIRECTOR MAY BE APPEALED TO THE SUPERIOR COURT THAT HAS JURISDICTION OVER THE WATER RIGHT AS PART OF A GENERAL ADJUDICATION CONDUCTED PURSUANT TO

ARTICLE 9 OF THIS CHAPTER. OR IF THE RIGHT IS NOT SUBJECT TO A GENERAL ADJUDICATION TO THE SUPERIOR COURT PURSUANT TO TITLE 12, CHAPTER 7, ARTICLE 6. THE FORM OF THE APPLICATION AND OBJECTION SHALL BE PRESCRIBED BY THE DIRECTOR, BUT THE DEPARTMENT SHALL NOT CHARGE A FEE FOR PROCESSING AN APPLICATION.

Sec. 5. Section 45-257, Arizona Revised Statutes, as amended by Laws 1995, chapter 9, section 20, is amended to read:

*45-257. Hearings; report of master; final judgment by court; administration and enforcement of decree*

A. The master shall:

1. After due notice, conduct such hearings and take such testimony as shall be necessary to determine the relative water rights of each claimant.

2. For all determinations, recommendations, findings of fact or conclusions of law issued, prepare and file with the court a report in accordance with rule 53(g) of the Arizona rules of civil procedure, which shall contain those determinations. recommendations, findings of fact and conclusions of law. Each claimant may file written objections with the court to any rule 53(g) report within the later of sixty days after the report is filed with the court or within sixty days after the effective date of this amendment to this section. If the report covers and entire subwatershed or federal reservation, each claimant may file with the court written objections to the report within one hundred eighty days of the date on which the report was filed with the court.

3. Maintain under his control all records and documents at such locations as may be designated by the court.

B. The court, upon review of the report and in accordance with rule 53 of the Arizona rules of civil procedure, shall:

1. Determine the extent and priority date of and adjudicate any interest in or right to use the water of the river system and source, provided that when rights to the use of water or dates of appropriation have previously been determined in a prior decree of a court, the court shall accept the determination of such rights and dates of appropriation as found in the prior decree unless such rights have been abandoned. Except if otherwise provided in an applicable prior filing, certificate of water right or prior decree, the decreed capacity of a reservoir includes the right to continuous filling and refilling in priority throughout the year.

2. Establish, in whatever form determined to be most appropriate by the court, one or more tabulations or lists of all water rights and their relative priorities on the river system and source. which shall constitute constructive notice of the contents of the judgment or decree.

3. Identify all claims and uses determined to be de minimis uses within the river system and source as prescribed by section 45-258.

4. Refer the final judgment or decree to the director for administration and enforcement under the continuing jurisdiction of the court.

5. Make appropriate orders to ensure that the entire record of the general adjudication is preserved in an accessible and usable form.

6. Record a certified copy of the final judgment or decree in each county within the geographical scope of the general adjudication which shall constitute constructive notice of the contents of the judgment or decree.

C. Claimants may enter into agreements regarding the attributes, satisfaction or enforcement of their water rights in relation to each other. An agreement shall be finding only among the parties to that agreement. On request of all parties to the agreement, an agreement shall be incorporated by reference into the final judgment or decree without modification. Any modification to an agreement shall be incorporated by reference into the final judgment or decree without modification. Any modification to an agreement is valid only if agreed to by all parties to the agreement and is binding only among the parties to that agreement.

D. IF OWNERSHIP OF A RIGHT TO USE WATER FOR STOCKWATERING OR STOCKPOND PURPOSES OR FOR

246

DOMESTIC USE ON A RANCH OR FARM ON STATE LAND IS DISPUTED IN A GENERAL ADJUDICATION OF THE RIGHTS TO USE THE WATERS OF A RIVER SYSTEM AND SOURCE, THE WATER RIGHT SHALL BE ADJUDICATED IN THE NAME OF A CLAIMANT OTHER THAN THE STATE IF BOTH OF THE FOLLOWING APPLY:

1. THE POINT OF DIVERSION AND THE PLACE OF USE, OR THE PERFECTION OF THE WATER RIGHT BY THE APPROPRIATOR COMPLY WITH SECTION 37–321.01, SUBSECTION A.

2. THE STATE LAND COMMISSIONER HAS BEEN AFFORDED THE OPPORTUNITY TO RESOLVE THE CLAIM.

E. IN THE EVENT THAT THE STATE AND A PRIVATE CLAIMANT THAT CLAIMS OWNERSHIP OF THE WATER RIGHT UNDER SUBSECTION D OF THIS SECTION DISPUTE THE OWNERSHIP OF THE RIGHT TO USE WATER ON STATE LAND, THE EVIDENTIARY PRESUMPTIONS OF SECTION 45–261 SHALL NOT APPLY TO THE RESOLUTION OF THE DISPUTE. FOLLOWING THE DETERMINATION OF OWNERSHIP BY THE MASTER OR COURT, THE EVIDENTIARY PRESUMPTIONS OF SECTION 45–261 SHALL APPLY TO THE DETERMINATION OF THE REMAINING ATTRIBUTES OF THE WATER RIGHT.

F. IF OWNERSHIP OF A RIGHT TO USE WATER ON LAND OWNED BY THE UNITED STATES IS DISPUTED IN A GENERAL ADJUDICATION OF THE RIGHTS TO USE THE WATERS OF A RIVER SYSTEM AND SOURCE, THAT WATER RIGHT SHALL BE ADJUDICATED IN ACCORDANCE WITH SECTION 45–151, SUBSECTIONS E AND F.

APPROVED BY THE GOVERNOR APRIL 19, 1995

FILED IN THE OFFICE OF THE SECRETARY OF STATE APRIL 20, 1995